(50 South. 806.)

No. 17,782.

STATE v. BRADY.

(Nov. 15, 1909. Rehearing Denied Dec. 13, 1909.)

1. CRIMINAL LAW (§ 723*)—TRIAL—REMARKS OF ASSISTANT DISTRICT ATTORNEY.

The remark, addressed by counsel assisting the district attorney, with regard to friendship by a juror, examined on his voir dire, for the accused, was not of such importance as to affect the judgment of the jurors by whom it was heard.

The talesman was excused by the court.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1676; Dec. Dig. § 723.*]

2. HOMICIDE (§ 216*)—DYING DECLARATION—ADMISSIBILITY — PRELIMINARY EVIDENCE — ANTE MORTEM STATEMENT.

There was sufficient predicate laid for the admission of the dying declaration.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. § 457; Dec. Dig. § 216.*]

3. CRIMINAL LAW (§ 359*)—EVIDENCE—MOTIVE.

Evidence which does not tend to connect a third person with the crime charged is not admissible.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 789, 790; Dec. Dig. § 359.*]

4. CRIMINAL LAW (§§ 666, 720*)—WITNESS—FAILURE TO EXAMINE.

The state is not bound to examine a witness in whom she has lost confidence, although subpœnaed by the state.

Comment of counsel for the prosecution was not so harsh as to justify interference with the finding of the jury.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1567–1579, 1670, 1671; Dec. Dig. §§ 666, 720.*]

5. CRIMINAL LAW (§ 720*) — ARGUMENT OF COUNSEL.

Argument of counsel assisting in the prosecution was on the hypothesis that the case presented an issue to the jury. The defense denied that there was such an issue before the court upon a particular point.

From the record the court infers that the trial judge ruled correctly; that the point argued was not entirely dehors the record.

[Ed. Note.—For other cases, see Criminal Law, Dec. Dig. § 720.*]

6. HOMICIDE (§ 314*)—APPEAL—VERDICT.

The jury had the authority to modify its verdict. The modification does not give rise to the inference that the jurors were not certain of the correctness of the verdict.

[Ed. Note.—For other cases, see Homicide, Dec. Dig. § 314.*]

(Syllabus by the Court.)

Appeal from Thirteenth Judicial District Court, Parish of Rapides; W. F. Blackman, Judge.

Henry Brady was convicted of murder, and he appeals. Affirmed.

Blackman & Overton, for appellant. Walter Guion, Atty. Gen., John R. Hunter, Dist. Atty., and R. G. Pleasant, for the State.

BREAUX, C. J. The defendant was prosecuted on an indictment for murder.

The jury found him guilty as charged and qualified the verdict "without capital punishment."

The facts are that, late in January of this year, the defendant and Will Lacaze, a deputy sheriff were present at a negro dance, given by a negro employé of the Rapides Lumber Company in the parish of Rapides.

Lacaze, the deputy sheriff, was in the employ of that company.

At about 2 o'clock in the morning, he left for his home. On the way, passing through the woods, he was shot in the back in the region of the kidneys.

No witness was present at the shooting.

The report of the shot awakened John Marshall, who walked from his house to the place where the deceased lay.

Marshall states that he could not identify the deceased without a lamp. The wounded man requested him to go and tell his brother, John Lacaze, to come to his assistance at once.

He was carried a little distance and laid upon the gallery of a house near by. Soon after the local physician, Dr. Choppin, came. After a little time, the doctor, who is also

the physician of the lumber company before named, had an engine and car brought to take the wounded man to Alexandria, where there are better medical, surgical, and sanitary facilities. About an hour after the shooting, the deceased, together with the physician and some attendants, were placed on the train for the purpose of going to Alexandria. After running a few miles, Lacaze died.

The deceased in his dying declaration charged the defendant with having shot him.

The defendant urged that there was a mistake as to identity and sought to prove an alibi.

Counsel for defendant alleged: That on a dark night it was not possible for the deceased to identify the defendant; that in the darkness the witness Marshall could not identify the deceased without a lamp, and by reason of the darkness it was not possible for the deceased to identify the defendant.

This is an outline of the facts.

We will go further into their consideration in considering the bills of exception which have brought before us the points for decision.

In June, 1909, the defendant was placed on his trial.

Ten jurors had been selected and sworn. When the eleventh juror was presented to be examined on his voir dire, something was said by him about friendship for the deceased. He was asked, by the attorney assisting the district attorney, if the friendship he professed having for the accused was the friendship "of a white man for a white man, or a white man for a negro."

After this the juror was not selected. He was excused by the court from serving on the jury.

The jury panel was completed.

The words before mentioned, "white man for a negro," were made the grounds of one of the bills of exception.

The first exception of the defense was: That the accused is regarded in the community as a white man; that he associated with persons of the Caucasian race, and was married with a white woman; that the remark before quoted about friendship for a negro caused prejudice against him; that the state relied upon the uncorroborated ante mortem statement of the deceased; that the community was already very much put out by the assassination; that the fact that the attorney alluded to the negro race added to the feeling already prevailing; that the remark had a prejudicial effect upon the cause of the defense; that 10 of the jurors heard the remark; and that the trial judge did not instruct the jury to disregard the statement about friendship for a negro.

The fact is that there was objection made by counsel for the defendant at the time to this statement, and the objection was sustained by the court.

We have noted that the complaint of the defense is that the trial judge did not instruct the jury to disregard the statement. It does seem to us that, having sustained the objection of defendant's counsel, this in itself was sufficient disapproval of the remark made. Besides, it is not to be presumed that 10 serious men are influenced by the utterances of counsel in examining jurors.

The question has no bearing upon the case, and, when considered seriously, was not one to influence a serious man bent upon the performance of his duty as a juror. The jurors, doubtless, knew the surrounding conditions, knew that he was not colored, if he was not, and from that point of view the defendant was not injured.

In any event, these words cannot be given importance at this time to the extent of justifying the reversal of the jury's action.

The next objection was made to the ruling of the district judge admitting in evidence the dying declaration of the deceased.

The record discloses that the attending

physician said to the deceased, in answer to the statement of the latter that he was going to die, that he must not talk that way, for he believed that he might be saved. The deceased said, "No," that he knew he was "going to die." And afterward the deceased added:

"To think that I have been killed by such a G—— d—— thing as that!"

The deceased said that he knew he was going to die both before and after he had uttered the curse words above quoted. In fact, the deceased talked freely all the time, and repeated that he was going to die. His utterance, at no time, indicated hope.

The curse words, it is true, did not denote that he was very deeply impressed by the solemnity of the occasion.

It is equally true that it is very seldom that men in their last moments will use curse words; but it does not follow always that the use of these words may not be made by one painfully and fatally wounded and conscious of the gravity of his wound. They may be used by a dying man who is in the habit of using such words. It is common knowledge that one who is addicted to the use of curse words may almost unconsciously use them on a solemn occasion.

We have noted that an attempt was made by the physician to take his patient to Alexandria. It does not necessarily give rise to the inference that the deceased had hope of recovering, for it does not appear that his removal was made at his instance, or even after having obtained his consent. They had placed him on the car, and in the short distance that he lived on the way he was heard to say again that he would not live.

It is true again that the physician said to him:

"We will get you all right. Do not talk about dying."

This, at first blush, has the appearance of sufficient influence to give rise to hope. We gather from the testimony that the words of the physician did not have the least influence. He continued to say that he would die.

Physicians do not always impress their patients in assuring them that there is hope. The manner of the physician or his words, while, doubtless, seeking to relieve his patient of his suffering, do not of themselves lead to the inference that he must have had very great hope; but even if he, the physician, entertained hope, the post mortem statement would not of itself be inadmissible. That physicians and others have hope does not affect the admissibility of the declaration if the dying man had no hope.

A surgeon in a celebrated English case, referred to by Wharton, in his work on Criminal Evidence (section 283), did not think the case hopeless. The patient thought differently. The declaration was read in evidence.

The dying declaration was made to the physician to whom the deceased said that he was coming from the negro dance, to which he had gone as a deputy sheriff, and on his way back he passed several pine trees, and behind one of them he saw the defendant standing. He passed on and paid no attention, as he did not suspect harm at the hands of the defendant. That after passing he heard the click of a gun lock. He turned and looked over his shoulder and recognized the defendant, who shot and started to run down the road toward a fire that was burning, and which we infer gave some light in the dark night.

Regarding the motive of the defendant, deceased said he had caught him selling whisky, and that that accounted for defendant's enmity.

The dying declaration was properly admitted. There was sufficient predicate laid for its admission. The facts do not sustain defendant's contention with regard to deceased's hope of living.

In the next place, another ground of de-

fense is that the deceased, having ascribed as motive for the killing the fact that he had caught the accused selling liquor without a license, and that as the defense of the case is mistaken identity and an alibi, the minutes of the court were admissible to prove that others had been caught and arrested and fined large sums of money, and that they, and not the defendant, were thereby prompted to kill.

The evidence was not connected with the issue. It does not appear that these parties had anything to do with the crime, or were engaged in the least in the direction of committing a crime.

Evidence which does not tend to connect a third person with the crime is not admissible. Walker v. State, 139 Ala. 56, 35 South. 1011.

Upon another ground, objection was made by counsel for defendant to a statement of counsel, assisting the district attorney, in giving reason for not examining a witness upon whom a subpoena had been issued to testify for the state.

In argument the question naturally arose why it was that the state had not examined a witness upon whom a subpoena had been served and who was present at the trial. The reason, as given by this counsel, was that the state knew the witness to be unworthy of belief on oath and knew that "he was going to lie."

The statement was objected to as prejudicial. Counsel for the defendant, for the reason that there had been no witnesses placed upon the stand who in any way attacked the veracity of the witness, stated that the statement should not have been made, and complained in argument before this court that the district judge did not instruct the jury to disregard the statement.

We infer that during argument it was deemed proper to state particularly as there was complaint, the reason that had influ-

enced the state in not calling the witness to testify.

It may be that counsel representing the state was more emphatic than he should have been; but, even then, it affords no ground for this court's interference. The state had lost confidence in its own witness. It was so stated. In view of that fact, she could decline to place him on the stand.

We will here state that the defense made him a witness.

The weak point of defendant's objection is that no request was made of the trial judge to instruct the jury to disregard the statement of counsel.

The next point on the part of the defense is that the state failed to sustain the issue of motive which actuated the defendant to kill the deceased; that the attorney assisting the district attorney, none the less, assumed in argument that the motive had been proved, and argued on that hypothesis.

There was evidence admitted to show the motive, and in this respect there is error on the part of the defense in saying that there was no evidence. The dying declaration stated the motive.

The judge informs us that he admonished counsel not to leave the record.

Argument of counsel is left in great part with the trial court to restrain the argument within due bounds. Unless it goes entirely too far, it affords no ground for interference on appeal. There are a number of decisions on the subject to which we deem proper to refer at this time: State v. Johnson, 48 La. Ann. 89, 19 South. 213; State v. Spurling, 115 La. 790, 40 South. 167; State v. Meche, 114 La. 231, 38 South. 152; State v. Montgomery, 121 La. 1006, 46 South. 997; State v. Mitchell, 119 La. 374, 44 South. 132.

These decisions sustain our view.

Able counsel, in the concluding paragraph of his well-considered and elaborate brief, dwells upon the verdict as indicative of a

lurking doubt in the minds of the jurors. That the fact, in a case in which the verdict should have been guilty or not guilty, that the jury found the accused guilty and qualified the verdict, was evidence of uncertainty in the minds of the jurors. That the case was of such a character that there should have been no uncertainty if the jurors were satisfied of defendant's guilt.

This is far from being controlling. To arrive at that conclusion, we would have to assume much more than we are inclined to assume. The sufficiency of testimony under the instruction of the court is left to the jury. It is for them to decide. The fact that that body has modified its verdict does not afford ground for a legal conclusion different from that at which we have arrived.

It is true that our learned Brother of the district court said, in part.

"There may be some doubt as to identity; but the jury settled the question."

We infer that he was convinced that the jury settled the question correctly.

From our point of view, there remains nothing for us to do except to affirm the jury's verdict.

For reasons assigned, the verdict and sentence of the jury are affirmed.

PROVOSTY, J., concurs in the decree.