(63 South. 869.)

No. 20,124.

STATE v. JENKINS et al.

(Dec. 15, 1913. Rehearing Denied Jan. 5, 1914.)

*(Syllabus by the Court.)*

1. CRIMINAL LAW (§ 358*)—PROSECUTION ON CIRCUMSTANTIAL EVIDENCE — REBUTTAL — HOMICIDE.

Where, in a prosecution for murder, it appears that the deceased was called to the door of his house, at night, and shot, and witnesses for the state testify that they saw the two persons on trial very near the house at the time, and also saw a third person with them whom the witnesses did not recognize, but no witness testifies to the actual shooting or that defendants or their companion appeared to be possessed of any implement with which to shoot, the case presented by the state is one of circumstantial, and not of direct, evidence.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 763; Dec. Dig. § 358.*]

2. CRIMINAL LAW (§ 359*)—PROSECUTION ON CIRCUMSTANTIAL EVIDENCE — REBUTTAL — HOMICIDE.

In such case it is competent for the defendants, who set up an alibi, to introduce evidence for the purpose of showing that three men, who were strangers, were in the neighborhood, shortly before the killing, inquiring for the residence of the deceased, and that one of them, upon receiving directions upon that subject, remarked, "We'll get him," that the three strange men were also seen within an hour or two after the killing, and that about midnight three strangers inquired about getting across Pearl river, which, in that vicinity, constitutes the boundary between Louisiana and Mississippi, for such evidence, if credited by the jury, might establish a reasonable hypothesis of the guilt of the three strange men or a reasonable doubt as to the guilt of the defendants, and, for either purpose, should go to the jury, together with the question of the credibility vel non of the witnesses.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 789, 790; Dec. Dig. § 359.*]

*(Additional Syllabus by Editorial Staff.)*

3. CRIMINAL LAW (§ 552*)—CIRCUMSTANTIAL EVIDENCE—PROBATIVE EFFECT.

The test of the sufficiency of circumstantial evidence, in a criminal case, is not whether it produces the same conviction as the positive testimony of a single eyewitness but whether it produces moral conviction to the exclusion of every reasonable doubt.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1257, 1259–1262; Dec. Dig. § 552.*]

Appeal from Twenty-Sixth Judicial District Court, Parish of Washington; J. B. Lancaster, Judge.

Alfred Jenkins and another were convicted of manslaughter, and appeal. Reversed and remanded.

Carter & Carter, of Franklinton, and Adams & Generelly, of New Orleans, for appellants. R. G. Pleasant, Atty. Gen., and J. Vol Brock, Dist. Atty., of Franklinton (G. A. Gondran, of Donaldsonville, of counsel), for the State.

MONROE, J. The defendants herein, having been tried for murder and convicted of manslaughter, prosecute this appeal from such conviction and from the sentence imposed. They complain of the exclusion of certain

testimony offered on their behalf and, upon the same ground, to the overruling of their motion for a new trial. In the statement per curiam, attached to one of the bills of exception relied on, we find the following:

"The true facts in this case are that the deceased, William Brock, was called from his home, at Rio, Washington Parish, La., on Sunday night, March 23, 1913, between the hours of 9 and 9:30 o'clock, and, as he stepped from out of the door onto the gallery, he was instantly shot and in fact literally shot to pieces. The coroner testified that four or five different caliber of bullets were found in his body, indicating that more than two persons participated in the shooting which resulted in the death of the deceased. Witnesses for the state testify that a perfect fusilade of shots was fired, and they saw, recognized, and identified the two accused and saw a third person, whom they did not recognize, very close to the home of the deceased, and at the time of the shooting."

The case presented by the state being as above set forth, the defendants offered to make proof as follows:

By Mrs. Lizzie Jenkins:

"That on the night of the killing, at an early hour of the night, she was at her home, about two miles from Rio, and that three strange men walked up to her gate and hailed; she went out and asked what they wanted, and they told her that they wanted to know where William, or Bill, Brock lived; they wanted directions to his place; that she told them that she couldn't give exact directions, but, if they would take the railroad, it would carry them to Rio, and there they would find Mr. Brock; and that one of them remarked, as they left the gate, 'We'll get him.'"

By Heintz Byrd:

"That on the night of the killing, about 11 or half past 11 o'clock, the witness met three or four strange men about 200 yards from Rio, the scene of the killing; that they asked him who he was."

By Piercy Mizell:

"That on the night of the killing, between 12 and 1 o'clock, the witness met three strange men about two miles from Rio, south of town, who inquired of him how and where they could cross the river, and how far the railroad switch on which they were traveling, which was that of the Sun Lumber Company Tram Road, or Dummy Line, ran in that direction; that he informed them that he didn't know how near the train road went to the river, but that it went into the swamp, but that they would have to go some distance down the river before they could find a crossing; that the crossing was on a boom; that these men were all strangers to him and strangers in the community."

The testimony so offered was objected to on the ground that it was immaterial and irrelevant; and the objections were sustained for reasons which were assigned, at considerable length, by the trial judge, and which rest upon, or are intended to support, the following propositions, to wit:

"That the evidence of these witnesses is a mere presumption of possibility that these 'three strange men' killed the deceased, and not the accused; that for this purpose this evidence is too remote, vague, indirect, and indefinite. * * *

"That this evidence of the three witnesses * * * was not offered in rebuttal of any evidence or statement of fact brought out by the state but was evidently offered as a defense, as the state's case against the accused was not based, and did not depend, upon circumstantial evidence but upon positive, direct evidence."

In the course of his statement, the learned judge says that defendants' allegation, in their motion for new trial, that the state failed to show any motive for the crime amounted to an admission that the testimony offered by them was not intended for purposes of rebuttal, and he continues:

"The court does not admit, nor does it intend to infer, 'no motive' whatever was shown. The jury heard the whole evidence in the case, and their verdict of guilty of manslaughter disposes of that contention.

"Therefore it is evident that the purpose of the offering of this evidence was solely and purely a defense, going to show that other persons than the accused might have a greater reason to kill the deceased than the accused, evidence at best hearsay and inadmissible. A careful analysis of this evidence conclusively shows how extremely weak and remote it is."

Then follows the statement of the facts of the case (quoted above) and a further assignment of reasons as follows:

"Under this condition of fact, the evidence of Mrs. Lizzie Jenkins, Heintz Byrd, and Piercy Mizell was not and could not be admissible, as it is evident that more persons than the accused participated in the killing of the deceased, and hence the evidence of these wit-

nesses could not have established the innocence of the accused, as they could have been guilty just as well as the other participants in the killing of the deceased, who were unknown and not apprehended. Further, a majority of the witnesses, both for the state and the defense, testify that the shooting occurred at 9:30 o'clock of the night of March 23, 1913. Some place the hour as early as 9 o'clock of that night. Mrs. Jenkins says that these 'three strange men' hailed at her house, which is about two miles north or northeast of Rio, in the early part of the night of the killing. Heintz Byrd says he saw 'three strange men' 300 yards from Rio between 11 and 11:30 of the night of the killing, about 2 to 2½ hours after the shooting. Strange indeed these 'three strange men' waited around Rio, the scene of their dastardly deed, for two hours or more. What were they waiting for? To give themselves up to justice? Not a single one of these three witnesses place the 'three strange men' in Rio or near there at between 9 and 10 o'clock of the night of the shooting, which was the time the shooting took place. * * * Piercy Mizell says he saw three strange men two miles south of Rio between 12 and 1 o'clock of the night of the killing. There is no evidence going to show that the 'three strange men' seen by Mrs. Jenkins were the same 'three strange men' seen by Heintz Byrd or the same 'three strange men' seen by Piercy Mizell. These witnesses say that these men spoke to them; yet no descriptions of these men are given by them by which they could be identified as the same men seen by these witnesses at different times and different places. It is evident that the sole purpose of this evidence was as a defense, being solely an attempt to show that others than the accused were the guilty parties, to shift, as it were, the guilt of the accused to the persons of these 'three strange men,' whom nobody knew, nobody could identify, nobody saw. * * *"

[1-3] It does not appear that any witness testified to having seen the defendants, or either of them, in the act of shooting, or even in the possession of any shooting implements or implement; and it was stated in the argument that they attempted to defend by the establishment of an alibi and offered evidence to that effect. In view, then, of the admitted fact that all that was shown to connect them with the killing was that they, with another person who was unknown to the witnesses, were seen "very close to the home of the deceased at the time of the killing," it is clear that the trial judge erred in holding that "the state's case

against the accused was not based, and did not depend, upon circumstantial evidence, but upon positive, direct evidence," since the testimony offered by the state tended to prove only that the deceased was killed and to establish certain facts from which the jury were led to infer that the killing was done by defendants. The test of the sufficiency of such evidence is, "not whether it produces the same conviction as the positive testimony of a single eyewitness, but whether it produces moral conviction to the exclusion of every reasonable doubt." 12 Cyc. pp. 489, 490. If, however, it is competent for the state to introduce evidence of facts from which the guilt of the accused may be inferred, it must be and is competent for the accused to introduce evidence of other facts, which tend to establish his innocence, by furnishing a basis for the inference that the offense was committed by some one else, or that the deceased came to his death otherwise than by murder or manslaughter, or which casts such a reasonable doubt upon the matter as to render it impossible for the jury to find that it produces a moral conviction of the guilt of the accused to the exclusion of such doubt. Where there is no direct evidence that the accused on trial committed the crime with which he is charged, he may suggest the possibility that it was committed by some other, unidentified person; but to institute an inquiry based upon so vague a suggestion could lead to no result, and in such case he and the state must stand upon the evidence establishing facts which, in the opinion of the jury, either authorize the inference of his guilt or fail to do so, and he is convicted or acquitted accordingly. Or the accused may suggest and offer to prove facts from which, in his opinion, the jury might reasonably infer that a particular person, other than he, was more likely to have committed the crime, in which case the question for the court to consider is whether the facts suggested, if

proved, would bring the particular person referred to into such relation with the crime itself as to establish either a reasonable hypothesis of his guilt or a reasonable doubt of the guilt of the defendant. In fact, the rule in regard to the admission of evidence in such case has been held to go somewhat further. Thus in Murphy v. State, 36 Tex. Cr. R. 24, 35 S. W. 174, it was said by the court:

"We would further observe, in regard to this character of testimony, that, in a case wholly depending on circumstantial evidence, it is the duty of the jury to explore every reasonable hypothesis consistent with the innocence of the defendant before they would be authorized to convict him. In other words, if the evidence reasonably shows that some other person than the accused committed the offense charged, it is their duty to acquit; or, if the circumstances which tend to show that some other person may have committed the crime are sufficient to raise a reasonable doubt of the defendant's guilt, an acquittal should follow. This is in accord with the rule on circumstantial evidence. It must not only be sufficient to convict the defendant, but, in testing its sufficiency, it must exclude the hypothesis that somebody else committed the offense.. While this is the rule laid down with reference to the charge of the court on circumstantial evidence, the testimony itself can hardly be circumscribed within such limitations; the rule as to circumstantial evidence being, as to its admissibility, that every circumstance, however remote, that may tend to shed any light upon the issue in the case is admissible. So that, in the admission of testimony, the rule, as we understand it, is more latitudinous. In other words, the circumstances themselves, upon any given theory, may not present an hypothesis entirely reasonable. Still it would not follow that such circumstances are not admissible, or that the jury would not have a right to consider them in connection with other circumstances and theories in the case."

In Leonard v. Territory of Washington, 2 Wash. T. 396, 7 Pac. 878, it was said:

"In excluding certain proffered testimony of James Galloway, a witness for defense, it is claimed there was error. By him defendant proposed to prove that a person other than himself resided in the neighborhood of the supposed homicide, * * * was there on the day of it, entertained hostile feelings towards the deceased, and had threatened to kill him. In view of the evidence for the prosecution, we think this testimony should have been admitted. One main question on the trial was: Who killed the deceased? Addressed to this, the evidence for the prosecution was wholly circumstantial;

and some of it, tending to identify the defendant as the slayer, was of a like description to that proposed to be obtained from this witness. Defendant, therefore, had a right to meet and neutralize or overcome the evidence of the prosecution, tending to identify himself as the guilty party, by evidence of the same nature tending to identify some other person as the perpetrator of the crime."

In Morgan v. Commonwealth, 14 Bush (Ky.) 113, it was said:

"In other words, as the commonwealth had the undoubted right to prove the acts and conduct of the prisoner at the time of the commission of the offense charged, and also to show a motive for its commission by evidence of previous threats made against the deceased, had the prisoner not the right to show that there was another man present when the crime charged was committed, and that he was armed and had equal opportunities with the prisoner to have done the deed? And, when the proof was conflicting as to which of the two did it, could the prisoner not show, not only the acts and conduct of this other man towards the deceased during the conflict which resulted in his death, but also show further that he was an enemy of the deceased and had threatened his life, so as not only to show the acts and conduct of this other man, but also the motives that may have actuated him to attempt the life of the deceased? We think he could."

In Sawyers et al. v. State, 15 Lea (Tenn.) 695, it was said:

"If there is proof in the possession of an accused tending to show that another had the motive, or was in condition to be acted upon by causes which might produce the motive, to commit the offense, such facts may be shown as items of proof tending to establish a motive in the breast of such other person, and to that extent prove the existence of an hypothesis inconsistent with the guilt of the prisoner; the value of such evidence to be determined by the jury, who should give to it any such weight as its surroundings may justify."

Which presents very much the case that we have here, for we are informed by the trial judge that some of the witnesses identified the defendants now before the court as being two of three men whom they saw near the house of the deceased at the time of the killing, from which fact alone the jury inferred that the killing was done by them. On the other hand, counsel for defendant say, and their statement is unchallenged,

that four witnesses testified that defendants were, at that time, at their own home some miles away. Under those circumstances, if defendants had offered to prove that there were three men, other than themselves and the third man who is said to have been with them, as near to the dwelling of the deceased as they are said to have been, and at the same time, the evidence would certainly have been admissible, for the jury, in the absence of any other evidence, might well have been at a loss as to whom to convict. As the matter stands, the evidence, as tendered, would seem to present for the consideration of the jury two hypotheses other than that of the guilt of the defendant, to wit: That the "three strange men," who are said to have inquired, shortly before the killing, for the whereabouts of the deceased, and to have remarked, "We'll get him," and who are said afterwards to have made inquiries tending to show that about midnight they wished to get across Pearl river, which, in that vicinity constitutes the boundary between Louisiana and Mississippi, were at the scene of the killing and committed the murder, though they were not seen by the witnesses who saw the defendants and their companion; or else that the witnesses who testified that they saw the defendants were mistaken and really saw the three strangers. The judge a quo evidently disbelieved the statements made by the witnesses tendered on behalf of defendants, and his disbelief may be well founded; but the question of the credibility of those witnesses is one which should have been left to the jury.

The trial judge has cited, in support of the ruling made by him, the cases of State v. Perry, 51 La. Ann. 1074, 25 South. 944; State v. Vaughn, 44 La. Ann. 814, 11 South. 40; State v. Brady, 124 La. 951, 50 South. 806; State v. Johnson, 31 La. Ann. 368; State v. West, 45 La. Ann. 17, 12 South. 7. We have examined those cases but do not find them applicable to the case at bar.

134 LA.—7

The verdict and sentence herein are therefore set aside, and the case is remanded to be further proceeded with according to law.