470 So.2d 585 (1985)
STATE of Louisiana
v.
David Allen PATCH.
No. 84-KA-1252.
Court of Appeal of Louisiana, First Circuit.
May 29, 1985.
*586 Ossie Brown, Dist. Atty., by Tom Walsh, Asst. Dist. Atty., Baton Rouge, for plaintiff-appellee.
Lewis Unglesby, Baton Rouge, for defendant-appellant.
Before EDWARDS, SHORTESS and SAVOIE, JJ.
EDWARDS, Judge.
David Allen Patch, nineteen years old at the time of this offense, was convicted of obscenity under LSA-R.S. 14:106 A, given a suspended sentence of 18 months in the custody of the Department of Corrections, and placed on three years active, supervised probation with special conditions not pertinent here. Under LSA-C.Cr.P. art. 895.1, he was also ordered to pay $1,000 into the criminal court fund to defray the costs of court and $150.50 in clerk fees. He appeals his conviction and sentence, alleging five assignments of error.
Assignments of error numbers 3 and 5 were not briefed and are therefore considered abandoned. Uniform rules, Court of Appeal, Rule 2-12.4. However, because we find merit to defendant's first *587 assignment of error, requiring reversal of his conviction, we need not discuss assignments of error numbers 2 and 4.
The incident for which the defendant was charged and convicted occurred at an apartment complex in Baton Rouge on December 19, 1983, around 7:00 p.m. Mrs. Virginia Mitchell, the victim, was baking a cake and had stepped outside her apartment to listen to a church group gathered around the pool singing Christmas carols. When she returned to her apartment and was about to step inside the door, she saw a young man standing about ten feet away near some hedges outside the corridor connecting her apartment building to the next. Ms. Mitchell described the corridor as very well lit, but the two investigating officers who were dispatched to the scene described it as dimly lit or dark. The young man stood there, genitals exposed, apparently masturbating. Ms. Mitchell testified that while fondling himself he said, "You have a nice ass, I want to f___ you." She hurried into her apartment and shut the door behind her. The entire episode lasted no more than "one or two minutes", possibly as little as thirty seconds.
She called the police and two officers arrived within thirty minutes. She gave them a description of the offender as a young white man in his late teens or early twenties, about 5'9" tall, weighing between 120 and 130 pounds. He had curly, light brown hair, and was wearing bluejeans, a blue pullover shirt, and a tan windbreaker.
The two officers began to search the apartment complex. Within twenty minutes, they found the defendant and a friend, Scott Miller, sitting in the defendant's car listening to the stereo. The car was parked in the lot in front of his apartment where he lived with his mother, brother and sister. The defendant was the first person the police found who fit the victim's description, even though he stands closer to 6', and was wearing a light gray, short-sleeve sweatshirt and a dark red or rust-colored jacket with a fur collar. They asked him to accompany them to the victim's apartment for a possible identification. He agreed, but asked that his mother be allowed to come along. In a one-on-one confrontation at her apartment, Ms. Mitchell made a positive identification. The police arrested and charged the defendant with obscenity.
In his first assignment of error, the defendant contends that the trial court erred in excluding evidence "that another individual had committed the same crime in the same area who looked like the defendant, when identity was the issue in the case."
The defendant's main theory of defense was that Ms. Mitchell, despite her positive identification, had mistaken him for someone else. In support of this theory, he presented evidence of an alibi. His mother, his brother, his sister, and his friend all corroborated his own testimony that he had been asleep in his room all day after working the nightshift at a local drug store. His mother testified that when she got home from work that evening, around 5:45 p.m., she checked in on him and found him asleep in his room. He did not awaken until his friend, Scott Miller, came over after work about 7:10 p.m. and rousted him out of bed. Although the door to his bedroom was shut and no one actually saw him asleep in his room at precisely 7:00 p.m., each testified that he did not get out of bed all day or leave the apartment until after Miller arrived.
In support of his alibi defense, the defendant sought to introduce evidence that six months after the charged offense another man who resembles the defendant exposed himself to another woman who lives in the same apartment complex.
Out of the jury's presence, the defense counsel made a proffered statement that on May 14, 1984, only two weeks before the instant trial, at an elementary school located two blocks from the apartment complex where the earlier offense occurred, a young white male weighing between 120 and 130 pounds, about 5'9" tall, with light brown hair that is "worn in a way that makes it look curly," exposed himself to another young woman who lives in the same apartment complex. This latest victim's *588 mother was prepared to testify that she had seen this flasher's car in and around the apartment complex over the past few months. An investigator was prepared to testify that he had located the flasher by tracing the car's license plates, that the flasher is employed at a local business establishment in Baton Rouge, and that he took the victim to his place of employment where she positively identified him as her flasher. Finally, the victim herself was prepared to testify that her flasher bears a remarkable resemblance to the defendant. The State objected to the introduction of this testimony on the grounds of irrelevancy. The trial court sustained the objection and ruled the evidence inadmissible.
The defendant contends that the evidence is relevant and that its exclusion denied him the right to present evidence in his defense guaranteed by our federal and state consitutions.[1] We agree.
A defendant has the right to present any and all relevant evidence bearing on his innocence, State v. Vaughn, 431 So.2d 358, 370, n. 3-7 (La.1982) (on rehearing), unless prohibited by our federal and state constitutions, by law or by jurisprudence. State v. Ludwig, 423 So.2d 1073, 1077 (La.1982). To be admissible, the evidence must be relevant to an issue material in the case. LSA-R.S. 15:435. A "material issue" is one which is "of solid or weighty character, of consequence or importance" to the case. State v. Ludwig, 423 So.2d at 1078. "Relevant evidence" is that tending to show the commission of the offense and the intent, or tending to negative the commission of the offense and the intent. LSA-R.S. 15:441.
These statutory definitions are "essentially identical in concept" to the definition contained in the Federal Rules of Evidence, to wit: "`relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." State v. Ludwig, 423 So.2d at 1078 (quoting Federal Rules of Evidence, § 401).
Applying these principles to the present case, we conclude that the trial court erred in ruling the evidence irrelevant. Identification is a material issue in any criminal case. In light of the defendant's alibi, identification of the defendant as the offender is the key issue in this case. Evidence that a similar exposure incident had occurred six months after and only two blocks from the site of the present offense, by a person who was positively identified by that victim as resembling the defendant, is certainly relevant to the defense theory that the victim had misidentified the accused. It supports his alibi and tends to exculpate the defendant completely.[2]
State v. Jenkins, 134 La. 185, 63 So. 869 (1913), an early Louisiana case, states a broad rule which allows the introduction of evidence incriminating a third person when such evidence would establish a reasonable doubt of the guilt of the defendant.
Jenkins involved a murder of a man in Washington Parish. Physical evidence indicated that the man had been shot by more than one person, but the State's case against the defendants was wholly circumstantial. The State's witnesses testified that they saw the two men on trial in the vicinity on the night of the murder, but one of them actually saw the defendants shoot *589 the victim. The defendants attempted to introduce evidence that other men who fit their general description were also present in the vicinity of the murder and expressed a motive for killing the victim. The trial court excluded the evidence as irrelevant. Reversing, the Supreme Court stated:
If ... it is competent for the State to introduce evidence of facts from which the guilt of the accused may be inferred, it must be and is competent for the accused to introduce evidence of other facts which tend to establish his innocence by furnishing a basis for the inference that the offense was committed by someone else....
State v. Jenkins, 63 So. at 871.
The State contends that the holding in Jenkins applies only in cases where the prosecution is based solely upon circumstantial evidence. Jenkins states:
Where there is no direct evidence that the accused on trial committed the crime with which he is charged, he may suggest the possibility that it was committed by some other, unidentified person; but to institute an inquiry based on such vague suggestion could lead to no result, and in such case he and the state must stand upon the evidence establishing facts which, in the opinion of the jury, either authorize the inference of his guilt or fail to do so, and he is convicted or acquitted accordingly.
State v. Jenkins, 63 So. at 871. The State contends that because there is direct evidence of the defendant's guilt, namely, Ms. Mitchell's identification, the Jenkins rule is inapplicable and the evidence inadmissible. We disagree.
Relevancy is not determined by the characterization of the evidence as either circumstantial or direct. Any evidence, whether direct or circumstantial, is relevant if it tends to prove or disprove the existence of any material fact. State v. Ludwig, 423 So.2d 1073. Ms. Mitchell's identification, as direct evidence, tends to prove the defendant's guilt. The defendant's proffered testimony, though circumstantial, tends to establish his innocence. Both are therefore relevant to the issue of identification.
It is true however that even relevant evidence may be excluded, in the discretion of the court, if its admission would cause "undue delay" of the proceedings, "confuse the issue," "mislead the jury," result in unfair surprise, or otherwise prejudice one's opponent. See State v. Vaughn, 431 So.2d at 370, n. 7; State v. Ludwig, 423 So.2d at 1079. In such a case, these policy considerations are said to outweigh the probative value of the evidence, and the evidence even though relevant may be excluded. State v. Ludwig, 423 So.2d 1073.
However, excluding evidence on the basis of these policy considerations is entirely separate from determining whether the evidence is relevant. Jenkins is better understood in light of this distinction. Rather than establishing an inflexible rule for excluding or admitting circumstantial evidence whenever direct evidence of guilt is either present or absent in the case, Jenkins instead represents an early recognition of our modern rule that relevant evidence may be excluded on policy grounds.
However, we do not think those considerations outweigh the admission of the evidence in this case. The issue was simple, straightforward, and uncomplicated. Either the defendant was the offender, or Ms. Mitchell had mistaken him for someone else. The admission of the evidence which the defendant sought to introduce would not have confused the issue, misled the jury, prejudiced the prosecution, or otherwise unduly delayed the proceedings. Courts should never, out of fear of slowing down the trial, allow the wheels of justice to trample over the rights of a defendant in unfettered haste. The evidence establishes a reasonable possibility of misidentification. Whether it carries more weight on the issue than Ms. Mitchell's identification is a question for the jury to answer. cf. State v. Dyer, 154 La. 379, 97 So. 563 (1923). It was relevant and should have been admitted.
*590 Moreover, its exclusion was not harmless error. As stated in State v. Vaughn, 431 So.2d at 371,
Doubtless, conscientious trial judges have difficulty making quick decisions on complex issues presented during the trial and the "hindsight" of an appellate court's review of a full record may more clearly reveal the significance of an issue. For this reason, appellate courts accord great deference to the decisions of trial judges. Nevertheless, when a reviewing court concludes on a review of the record that the trial court improperly prevented a defendant from offering evidence which is critical to the theory of his case, we must reverse because the error is not harmless beyond a reasonable doubt.
(Footnotes and citations omitted).
Accordingly, the conviction is reversed, the sentence is vacated, and the case is remanded for a new trial.
REVERSED AND REMANDED FOR A NEW TRIAL.
NOTES
[1] U.S. Const. amend. VI; LSA-Const., Art. I, § 16 (1974).
[2] This evidence takes on even greater significance in light of the testimony of one of the arresting officers that he had investigated two other exposure incidents at the same apartment complex, neither of which involved the defendant.

Moreover, Ms. Mitchell's identification is not unassailable. She viewed the offender for a very short period of time. Her testimony that the corridor was "well lit", implying that she had a clear view of the offender, was directly contradicted by the testimony of the arresting officers. In the one-on-one confrontation, which the defendant contends (in an assignment of error not considered here) was unconstitutionally suggestive, Ms. Mitchell made only a visual identification of the defendant; she was not asked to listen to him speak.