WELCH, J.,
dissents.
hi respectfully dissent with the majority opinion.. If there was ever a case wherein the exclusion of evidence resulted in a violation of the defendant's constitutional right to present a defense, this is it. Herein, the trial court excluded evidence that tended to establish the defendant’s innocence by furnishing a basis for the inference that the offenses were committed by another person — Ricky Magee. The excluded evidence consisted of statements of other persons who either admitted to being involved in the shootings or to having conversations with those who had been involved, and the exclusion of this evidence violated the defendant’s constitutional right to present his defense — ie., that Ricky Magee, with the help of Monica Simmons and Andrew James, committed the murders at issue. Specifically, the defense attorney attempted to introduce the pretrial statements of potential witnesses in lieu of their trial testimony after those potential witnesses invoked their Fifth Amendment right not to testify, and the trial court excluded those pretrial statements on the basis that they were either inadmissible hearsay or based on inadmissible hearsay. However, I believe that Monica Simmons’s statements were admissible as a “statement against interest when the declarant is unavailable,” which is exceptions to the hearsay rule, and that Paul Robinson’s pretrial statement should have been admitted under the “state of mind” exception to the hearsay rule. Although Ricky Magee, Carla Simmons (Monica Simmons’s sister), Elissa. Smith, and Freddie Williams (the victim Demille Williams’s grandmother) agreed to testify, the trial court -ruled that the hearsay statements 12upon which them -testimony .would be based made their testimony inadmissible. In that regard, Carla Simmons and Elissa Smith should have been allowed to present testimony that would have included statements against interest made by the “unavailable” witness, Monica Simmons. Thus, I believe a new trial is warranted in this case.
A defendant has a constitutional right to present a defense.[1] U.S. Const. amend. VI; La. Const. art. I, § 16; State v. Van Winkle, 94-0947 (La. 6/30/95), 658 So.2d 198, 201. As the Supreme Court found in Chambers v. Mississippi, 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297 (1973), few rights are more fundamental than that of an accused to present witnesses in his own defense. A defendant has the right to present any and all relevant[2] evidence bearing on his innocence, unless prohibited by our federal and state constitutions, by law or by jurisprudence. State v. Ludwig, 423 So.2d 1073, 1077 (La. 1982); State v. Vaughn, 431 So.2d 358, 370, nn.3-7 (La. 1982) (on rehearing); State v. Patch, 470 So.2d 585, 588 (La. App. 1st Cir.), writ denied, 475 So.2d 358 (La. 1985). It is well-settled that evidentia-ry rules may not supersede the fundamental right to present a defense. Van Winkle, 658 So.2d at 202.
*55 Under La. C.E. art. 802, hearsay is generally inadmissible unless subject to an exception found in the Code or other legislation.[3] State v. Gremillion, 542 So.2d 1074, 1077 (La. 1989). Louisiana Code of Evidence article 803 provides pertinent exceptions to the exclusion of hearsay when the declarant is available as a | ¡¡witness, including the excited utterance exception and the state of mind exception.[4] When the declarant is unavailable[5] as a witness, La. C.E. art. 804(B) provides the following exceptions to the exclusion of hearsay: (1) former testimony; (2) statement under belief of impending death; (3) statement against interest; (4) statement of personal or family history; (5) records of regularly conducted business activity; (6) in a civil case,[6] a statement not covered by the foregoing exceptions if the enumerated conditions are met. Pursuant to La. C.E. art. 804(B)(3), a statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.[7] While hearsay should generally be excluded unless it satisfies the requirements of one of the recognized hearsay exceptions, if it is reliable and trustworthy and its exclusion would interfere with the defendant’s constitutional right to present a defense, it should be admitted. Gremillion, 542 So.2d at 1078; see also Van Winkle, 658 So.2d at 202.
Herein, the trial court noted the defense’s intent to call a number of witnesses who would potentially invoke their Fifth Amendment privileges not to ^testify. Thus, the defense requested to play certain taped police interviews.[8] The trial court reviewed the transcriptions of the statements and noted the defense’s argu- *56 raent was based on the statement against interest and excited utterance exceptions to hearsay. The trial court found that none of the potential witnesses made statements that would expose them to criminal liability for the crimes involved in the instant case, and concluded that there was no inherent trustworthiness in repeating hearsay about what someone else said about the instant case. Thus, the trial court found no indicia of trustworthiness. The defense attorney noted that Ricky Magee told Paul Robinson that he killed Kimberly Sims, and that Monica Simmons’s statements to several people, including detectives, Carla Simmons, and El-issa Smith, indicated that she facilitated the entrance into the victims’ house by knocking on the door knowing there would be a robbery. The trial court disagreed, noting that Paul Robinson did not make a statement against interest and that Monica Simmons had no idea what criminal acts would be performed according to her statement. Subsequently, anticipating that their testimony would be ruled inadmissible according to the trial court’s previous hearsay ruling, the defense attorney preferred the evidence at issue. The record indicates that Ricky Magee, Carla Simmons, and Elissa Smith were willing to testify, but that Paul Robinson and Monica Simmons would invoke their right against self-incrimination and not testify.
The trial court is vested with broad discretion to determine whether evidence is relevant or, even if relevant, has such little probative value that it is substantially outweighed by other considerations. See La. C.E. art. 403; State v. Coleman, L2014-0402 (La. 2/26/16), 188 So.3d 174, 200, cert. denied, — U.S.-, 137 S.Ct. 153, 196 L.Ed.2d 116 (2016). A trial court’s determinations regarding relevancy and admissibility should not be overturned absent a clear abuse of discretion. See State v. Mosby, 595 So.2d 1135, 1137-39 (La. 1992).
As noted by the majority, among the proffered statements submitted by the defense, in' Ricky Magee’s police interview on March 18, 2008, he admitted that he went to the victims’ residence on the day in question, that he purchased crack-cocaine from the victim Donald Wayne Demille Williams (Magee’s nephew) on that day, that he smoked the crack-cocaine elsewhere and went to sleep, and that when he woke up, he was informed of the victims’ deaths. He also denied telling anyone that he killed the victims.
At the time of Monica Simmons’s arrest on April 18, 2008, she told the police, “Alls [sic] I did was knock on the door, Ricky done it.” During police interviews on March 19, 2008 and April 20, 2008, while she denied being present at the scene, Monica Simmons stated that she believed Ricky Magee had something to do with the victims’ deaths. When she was asked why she believed that, she stated, “because he left the house. And I feel that a way because the weird way he was acting...” She further indicated that Ricky Magee asked her to provide a false alibi and that she felt as though Ricky Magee knew “all about it.” Then she added, “But I know one thing for sure I was not there. I don’t know anything about it.”
During Elissa Smith’s September 17, 2008 police interview, she indicated that Monica Simmons referred to victim Kimberly Sims as her best friend. Elissa Smith further indicated that Monica Simmons knew Ricky Magee was going to rob victim Donald Wayne Demille Williams, that Monica Simmons asked Ricky Magee to get some “dope” for her during the robbery, but she did not go with him or see him kill the victims though she knew “in [her] heart” that he had done so. | (¡Carla Simmons, who was interviewed by police on April 17,2008, similarly stated that Monica *57 Simmons told her that Ricky Magee did the shooting and that the victim Kimberly Sims was not supposed to get shot. She stated that Monica Simmons did not tell her why they went to the victims’ residence. Carla Simmons further stated, “And only way they can get in the house is Monica knock on the door for Kim to open that door. That’s the only person Kim[berly Sims] will ever let in her house at night.” Carla Simmons then confirmed that Monica Simmons told her that she knocked on the door to get the victim Kimberly Sims to open the door and that Monica Simmons heard gunshots after Ricky Ma-gee entered the house, but that she never personally entered the house. Carla Simmons stated that she was in jail when the purported events took place.
During Paul Robinson’s March 16, 2008 police interview, he stated that he, Ricky Magee, and Monica Simmons were at an associate’s house, and while he and Ricky Magee were “getting high,” Ricky Magee blurted out that he had to kill his friend, Kim. Paul Robinson stated that Ricky Ma-gee did not say how he killed Kim or reveal any other facts. Paul Robinson was in jail for unrelated charges at the time of his interview. Freddie Williams (Ricky Ma-gee’s relative), during his March 12, 2008 police interview, stated that Ricky Magee told him that he went to the victims’ residence on the night in question at 2:00 a.m. “to get high,” clarifying that he went to purchase more drugs from victim Donald Wayne Demille Williams. Freddie Williams also stated that he believed Monica Simmons helped Ricky Magee get in the house, noting that “everybody said” the victim Kimberly Sims opened the door for Monica.
State v. Jenkins, 134 La. 185, 188, 63 So. 869, 871 (1913), states a broad rule that allows the introduction of evidence incriminating a third person when such evidence would establish a reasonable doubt of the guilt of the defendant. This early expressed, less vigorous, rule of Louisiana jurisprudence has validity in |7Louisiana today through the constitutionally guaranteed “right to represent a defense” of set forth in La. Const. Art. I, § 16. State v. Ludwig, 423 So.2d at 1079. Jenkins involved a prosecution for murder where the State’s case was based upon circumstantial evidence. Physical evidence showed that the victim had been shot by more than one person and the State’s witnesses testified that they saw three men in the vicinity of the victim’s house. The trial judge improperly excluded testimony from four defense witnesses that the defendants were miles away from the murder scene, as well as testimony showing that three other men inquired about the victim’s whereabouts, made threats, and fled the jurisdiction. Thus, the Court reasoned that if it was competent for the State to establish the defendant’s guilt by circumstantial evidence, it was competent for the defense to suggest and offer to prove facts from which the jury might reasonably infer that another person was more likely to have committed the crime.
As discussed by the majority, in Chambers, the United States Supreme Court addressed the admission of hearsay evidence to protect a defendant’s constitutional right to present a defense. Chambers was convicted of murdering a police officer. At trial, he sought to introduce the hearsay testimony of three individuals to whom a third person, McDonald, had orally confessed to committing the murder on three separate occasions. The trial court excluded the hearsay statements. In reversing the conviction, the Supreme Court found the testimony “bore persuasive assurances of trustworthiness and thus was well within the basic rationale of the exception for declarations against interest.” The Court noted:
*58 The. hearsay statements involved in this case were originally made and subsequently offered at trial under circumstances that provided considerable assurance of their reliability. First, each of McDonald’s confessions was made spontaneously to a close acquaintance shortly after the murder had occurred. Second, each one was corroborated by some other evidence in the. case — McDonald’s sworn confession, the testimony of an eyewitness to the shooting, the testimony that McDonald was seen with a gun immediately after the shooting, and proof of his prior ownership of a .22-caliber revolver |sand subsequent purchase of a new weapon. The sheer number of independent confessions provided additional corroboration for each. Third, whatever may be the parameters of the penal-interest rationale, each confession here was in a. very real sense self-incriminatory and unquestionably ■ against interest.
Chambers, 410 U.S. at 300-01, 93 S.Ct. 1038. Additionally, the Court found the testimony was also critical to defendant’s defense. “In these circumstances, where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice.” Chambers, 410 U.S. at 302, 93 S.Ct. 1038.
As also discussed by the majority, in Gremillion, 542 So.2d at 1078, the Louisiana Supreme Court reversed the defendant’s manslaughter conviction, finding the lower courts’ exclusion of certain statements violated the defendant’s right to present a defense. The defendant therein sought to introduce a statement the victim made to the investigating officer in which the victim was unable to identify his attacker, other than to say that he was attacked by three white men. The defendant and the victim had been close friends, having known each other for approximately eleven years. The Court noted that although the statement did not fit into any of the recognized exceptions to the hearsay rule, it should have, nevertheless, been admitted into evidence due to its reliability and trustworthy nature. • The Court found the statement was corroborated by a similar statement the victim gave to. the treating physician. The Court noted the statement was given to a police officer investigating the crime, and there were no circumstances suggesting the statement was untrustworthy.- As previously noted herein, the Court recognized that while hearsay should generally be excluded, if it is rehable and trustworthy and its exclusion would interfere with the defendant’s constitutional right to present a defense, it should be admitted. Gremillion, 542 So.2d at 1078.
Herein, I believe that the trial court’s blanket ruling that the evidence at issue was not admissible ' as an exception to hearsay was clearly erroneous. The [^record indicates that if called as a witness, Monica Simmons would assert her Fifth Amendment privilege and refuse to testify; thus, she was unavailable as a witness. Monica Simmons admitted to Elis-sa Smith that she knew Ricky Magee was going to rob the victim Donald Wayne Demille Williams. Monica Simmons also told Carla Simmons that she knew about the robbery and that she knocked on the door of the victims’ house to allow Ricky Magee the ability to gain entry to the victims’ house and that she subsequently heard gunshots. Consistently, she admitted to the police that she knocked on the door of the victim’s house before Ricky Magee committed the shooting.
The admission of a statement against interest, as a traditional exception to the hearsay rule, is based on necessity and trustworthiness. The unavailability of the *59 declarant requirement generally establishes the need to admit an out-of-court statement. The “against interest” requirement assures some degree of trustworthiness, because a person ordinarily does not make a statement that is disadvantageous to himself without substantial reason to believe that the statement is true. Hammons, 597 So.2d at -996. Herein, .the repeated statements by Monica Simmons made to the various witnesses corroborate each other. ■ Further, Monica Simmons’ statements at issue were against her interests to a devastating degree and she was not likely motivated to falsify for the benefit of the accused — Jeremy Wilson. See Hammons, 597 So.2d at 996-97.
Moreover, the exclusion of this evidence resulted in a violation of the defendant’s constitutional right to present a defense. The proffered statements by Monica Simmons and Paul Robinson contained evidence that tended to establish the defendant’s innocence by furnishing a basis for the inference that the offenses were committed by Ricky Magee. If the State is allowed to introduce evidence of facts from which the guilt of the accused may be inferred, the defendant must likewise be allowed to introduce evidence of other facts, which tend to establish |inhis innocence, by furnishing a- basis for the inference that the offense was committed by someone else or which casts such a reasonable doubt upon the matter as to render it impossible for the jury to find that it produces a moral conviction of the guilt of the accused to the exclusion of such doubt. See Jenkins, 134 La. at 190, 63 So. 869. “It is difficult to imagine rights more inextricably linked to our concept of a fair trial [than the right to present a defense].” Van Winkle, 658 So.2d at 202; State v. McMillan, 2009-2094 (La.App. 1st Cir. 7/1/10), 43 So.3d 297, 308, writ denied, 57 So.3d 309 (La. 2/4/11). The substantial curtailment of a defendant’s right to present evidence of his defense cannot be- regarded as - harmless. See La. C.Cr.P. art. 921; La. C.E. art. 103(A)(2); State v. Brooks, 98-1151 (La.App. 1st Cir. 4/15/99), 734 So.2d 1232, 1240, n.6, writ denied, 99-1462 (La. 11/12/99), 749 So.2d 651. Although ithe majority concluded, and I' agree, that the evidence supported the jury’s- decision to reject the defense’s hypothesis of innocence, it is, nonetheless, inappropriate to speculate as to the impact of the excluded evidence in this case. Therefore, I believe that the trial court abused its discretion in ruling the evidence at issue inadmissible, that the defendant’s convictions should be reversed, that his sentence should be vacated, and this matter should be remanded for a new trial.
Thus, I respectfully dissent.

. Constitutional guarantees do not assure the defendant the right to the admissibility of any type of evidence, only that which is deemed trustworthy and has probative value can be admitted. State v. Governor, 331 So.2d 443, 449 (La. 1976).

. Relevant evidence is that tending to show the commission of the offense and the intent, or tending to negate the commission of the offense arid the intent. La. C.E. art. 401.

. Hearsay is an oral or written assertion, other than one made by the declarant while testifying at the present trial, offered in evidence to prove the truth of the matter asserted. La. C.E. arts. 801(A) & (C).

. Under the excited utterance exception, a statement relating to a startling event or condition is not excluded by the hearsay rule if it was made while the declarant was under the stress of excitement caused by the event. La, C.E, art. 803(2). Under the state of mind exception, a statement of the declarant’s then existing state of mind is admissible to prove the declarant's then existing condition or his future action. La. C.E. art. 803(3).

. “Unavailable" includes situations in which the declarant is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of his statement, persists in refusing to testify concerning the subject matter of his statement despite an order of the court to do. so, or testifies to a lack of memory of the subject matter of his statement.

. In accordance with Official Comment (d) to La. C.E. art. 804(B)(6), under certain circumstances, results similar to those authorized by the exception might be mandated by the right of compulsory process when the accused in a criminal case offered reliable, trustworthy evidence that did not fit within the contours of a legislatively recognized exception to the hearsay rule. See Gremillion, 542 So.2d at 1078-79.

. Typical corroborating circumstances include statements against the declarant’s interest to an unusual or devastating degree, or the declarant's repeating of consistent statements, or the fact that the declarant was not likely motivated to falsify for the benefit of the accused. Hammons, 597 So.2d at 996-997.

. Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), bars the use at trial of testimonial out-of-court statements unless the witness is unavailable and the defendant had an opportunity to cross-examine that witness. Regarding the opportunity to cross-examine the witness, it has long been recognized that a defendant may voluntarily waive the right to confront when the situation proves advantageous. Diaz v. United States, 223 UtS. 442, 450, 32 S.Ct. 250, 252, 56 L.Ed. 500 (1912); State v. Cunningham, 2004-2200 (La. 6/13/05), 903 So.2d 1110, 1120.