SHORTESS, Judge.
Guy E. Guerin (defendant) was charged by bill of information with committing the offense of aggravated battery upon Charles R. Lair in violation of La.R.S. 14:34. After trial by jury, defendant was found guilty as charged and was subsequently sentenced to a term of five years in the East Baton Rouge Parish Prison.[1] He was further sentenced pursuant to La.R.S. 14:95.2 to an additional two years in the Parish Prison to be served consecutively with the five-year sentence and to be served without benefit of parole, probation, *748 suspension of sentence, or credit for good time. Defendant appeals his conviction and sentence. He urges eight assignments of error.
Around 4:30 p.m. on July 9, 1982, a shoot out took place between defendant and Lair in a parking lot at the intersection of Government and St. Charles Streets in Baton Rouge, Louisiana, directly across the street from Lair’s office. Lair was shot in the arm, chest, and neck. Defendant was shot in the arm. Officer Mark Pinkley was investigating an accident a block away when he heard three or four shots fired in rapid succession. He turned and saw a man fall to the ground and saw another man leave the scene on a motorcycle. He heard no shots after the rapid-fire shots and said that the two men were facing each other when he first saw them. Dr. Joseph Miceli, an emergency physician at Our Lady of the Lake Hospital, saw defendant in the emergency room about 10:30 that evening. He found a gunshot wound which penetrated the posterior lateral aspect of defendant’s right upper arm. It was his opinion that this was the entrance wound. Defendant contends that when he saw Lair go for his gun he turned and began to run away, but after he was shot in the back of the arm, he turned around and shot Lair. Lair contended that he was shot by defendant before he ever got his gun out of his portfolio and did not remember ever firing his gun. Defendant’s theory is that he acted in self-defense because Lair shot him first and was the aggressor.
ASSIGNMENTS OF ERROR NUMBERS 1, 2 and 3
I. The trial court erred in denying the defendant’s Motion for Continuance, which motion was based on the absence of a material witness.
II. The trial court erred in holding that evidence of an ongoing, extra-marital affair between the alleged victim and the defendant’s wife was irrelevant and/or immaterial.
III. The trial court erred in refusing to allow certain defense witnesses to testify over objections of relevancy and hearsay.
These assignments of error were combined for purpose of argument because they are interrelated. We also deem it expedient to discuss them jointly because our resolution thereof is dispositive of the case. The defense here is self-defense. Defendant’s theory is that Lair was the aggressor and shot defendant first. In advancing that theory, defendant testified that he found in his wife’s purse a receipt from the Holiday Inn on Siegen Lane, dated about a week before the shooting, which had Lair’s name on it. Defendant also testified that on July 8, the day before the shooting, he confronted- Lair with a gun about Lair’s involvement with his wife; that he forced Lair to take a ride with him while they discussed the matter; that Lair would not promise to leave his wife alone; that he went back to Lair’s place of employment the next day on his motorcycle; that he again had his gun with him; that he waited for Lair at the front door of Lair’s office; that Lair came out of the office after work and as they walked across the street to the parking lot Lair told him that what Lair said yesterday still went; that he pleaded with Lair to leave his wife alone because it was “just messing my homé up” and he wanted Lair to leave his wife alone; that Lair hung his head, looked back up and said, “Well, okay, I’ll do that;” that they were standing face to face and he saw Lair coming up with a gun; that he turned to run and took 3 or 4 steps when Lair shot him; that there was another shot and he turned around and shot back; and that he ran over to his motorcycle, started it and drove off.
Lair testified that defendant was waiting for him behind a car when he got off work; that because of his abduction the day before he brought a loaded gun to work with him for protection; that as he approached his car, defendant accosted him, holding a motorcycle helmet in one hand while shielding or hiding a pistol in his other hand; that after some discussion between them, defendant told him that he was going to kill him; that the next thing he knew he *749 felt a sting in the chest and started falling; that he felt another sting in the neck; that he pulled his gun out from a portfolio but did not remember if he fired any shots; that he did not have his gun in his hand when he felt the first sting but was taking it out as he was going down; that he admitted knowing defendant’s wife but denied that he was having an affair with her and specifically denied ever spending the night with her at the Holiday Inn on Siegen Lane.
Defendant attempted to subpoena his estranged wife for trial but was unable to get service upon her. He moved for a continuance which was denied after a hearing. The trial judge ruled that anything she had to say would be irrelevant to the charge of aggravated battery. Defendant wanted to examine her about her relationship with Lair. Anticipating that she might deny any extra-marital involvement with Lair, defendant had also subpoenaed Jean Roan, Neale Anderson and Janice Lee. He hoped to elicit testimony from these three witnesses that his wife had told them that Lair was her man, that they picked roses together, went to the L.S.U. lakes together and had sexual relations in hotels in Baton Rouge, Lafayette and Hammond.
Jean Roan was actually called to the stand, but the trial judge sustained the State’s objection to hearsay. After that ruling the defense did not attempt to put Anderson or Lee on the stand, but they were, according to counsel, present and ready to testify.
An out-of-court statement made by a non-party that is against the declarant’s own interest is generally recognized as an exception to the hearsay rule. See D. Binder, The Hearsay Handbook, Exception 29, 199 (1975) McCormicks Handbook of the Law of Evidence 690 (E. Cleary 2nd ed. 1972), in discussing this exception, states:
To satisfy the instant exception to the hearsay rule in its traditional form, two main requirements must be met: first, the declaration must state facts which are against the pecuniary or proprietary interest of the declarant, or the making of the declaration itself must create evidence which would endanger his pocketbook if the statement were not true; second, the declarant must be unavailable at the time of trial. These two requirements, when satisfied, are believed to furnish respectively the safeguard of special trustworthiness and the requisite of special need for the use of hearsay, which are the traditional justifying elements of most of the exceptions to the hearsay rule.
(Footnotes omitted:)
In Chambers v. Mississippi, 410 U.S. 297, 93 S.Ct. 1038, 1047, 35 L.Ed.2d 297 (1973), the U.S. Supreme Court said:
A number of exceptions have developed over the years to allow admission of hearsay statements made under circumstances that tend to assure reliability and thereby compensate for the absence of the oath and opportunity for cross-examination. Among the most prevalent of these exceptions if the one applicable to declarations against interest — an exception founded on the assumption that a person is unlikely to fabricate a statement against his own interest at the time it is made. (Footnote omitted.)
Federal Rule of Evidence 804(b)(3) defines the declaration against interest statement as follows:
A statement which was at the time of its making so far contrary to the declar-ant’s pecuniary interest, or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.
Historically, Louisiana has distinguished between declarations against penal interest and declarations against pecuniary or proprietary interest. In State v. Gilmore, 332 So.2d 789 (La.1976), the Supreme Court *750 held that statements against a declarant’s penal interest were admissible as an exception to the hearsay rule.
Gilmore seems to have firmly established the declaration against penal interest as a hearsay exception in our jurisprudence. It appears that Chambers may have given a defendant a constitutional right to have such out-of-court declarations held admissible. In this case, however, we are dealing with a declaration against pecuniary or proprietary interest made by Mrs. Guerin to her friends Roan, Anderson and Lee.
We have found no Louisiana criminal cases dealing with the declaration against pecuniary or proprietary interest. However, our analysis of the cases and treatises on evidence convince us that historically the declaration against pecuniary or proprietary interest has been considered more trustworthy and reliable than declarations against mere penal interest. McCormick, at 671, states that “[t]he traditional field for this exception has been that of declarations against proprietary or pecuniary interest.”
We hold that a relevant out-of-court declaration made by a nonparty, unavailable for trial, against the declarant’s proprietary or pecuniary interest can be an exception to the hearsay rule and admissible for its probative value. Mrs. Guerin was not available. She was a nonparty. Her statements to Roan, Anderson and Lee were against her pecuniary and proprietary interest because she admitted an adulterous relationship. Adultery is a ground for immediate divorce in Louisiana (La.C.C. art. 139) and brings with it a dissolution of the community and other adverse effects (La.C.C. art. 155, et seq.).
Additionally, Angela Andrews, the manager of the Holiday Inn on Siegen Lane, was subpoenaed. Andrews was not permitted to testify concerning her hotel records, as the trial court ruled that they were inadmissible as being irrelevant. However, defendant had a receipt from the hotel dated about a week before the shooting which had Lair’s name on it and was purportedly signed by Lair. This is the same receipt defendant found earlier in his wife’s purse. Andrews’ testimony would have been corroborative. It would have added weight to the testimony of Roan, et al. While the receipt itself was circumstantial evidence, the jury should have been allowed to consider and attach to it whatever weight it deemed appropriate. We assume that a proper foundation, if necessary, could have been laid to use the business records exception to the hearsay rule if use of the exhibit itself created any problem. State v. Hodgeson, 305 So.2d 421 (La.1974); State v. Lewis, 288 So.2d 348 (La.1974).
Also, since Lair had denied an assignation with Mrs. Guerin at the Holiday Inn on Siegen Lane, Andrews’ testimony was relevant for its contradictory value.
The trial court’s ruling which prevented Roan, Anderson, Lee and Andrews from testifying, either on the ground of hearsay or irrelevance, deprived defendant from presenting to the jury evidence which tended to corroborate[2] his theory that Lair was the one with the motive for being the aggressor because if defendant was out of the way, Lair could continue his illicit relationship with Mrs. Guerin without further interference from defendant. During the presentation of the State’s case, the trial judge, over objection, permitted evidence of the alleged kidnapping the day before the shooting, and the State argues here that that testimony was relevant not only to show the intent of defendant but also the state of mind of the victim which was put at issue by defendant’s assertion of self-defense. However, the trial court’s rulings during the presentation of defendant’s case prevented him from presenting evidence to the jury that Lair was the aggressor and that he had acted in proper self-defense under La.R.S. 14:21. Defendant contends that the irrelevancy ruling on the evidence of Lair’s affair with his wife left the jury *751 with the impression that the only reason Lair would have carried a loaded gun on the day of the shooting was to protect himself from defendant. He also contends that the jury was left with the impression that he had every reason to shoot Lair but that Lair had no reason to shoot him.
In State v. Vaughn, 431 So.2d 358 (La.1983), the Supreme Court, on rehearing, addressed the question of relevant evidence in support of a defense. In that case, two black males were charged with raping a white female. Their defense was consent. The defendants advanced a theory that the alleged victim could have consented to having relations with a black man because she had displayed open affection for her black brother-in-law. The victim denied that her brother-in-law was black, and the trial judge ruled that proof of this was an improper attempt to impeach on a collateral issue and inadmissible. The Supreme Court reversed, holding that La.R.S. 15:494 must give way if impeachment evidence is relative to an asserted defense. Specifically, the court said:
We therefore conclude that the trial judge should have exercised his discretion in favor of admissibility of the evidence, which (1) tended to prove a fact that was relevant and probative of the defense theory (but that had little prejudicial effect upon the prosecution’s theory) and (2) was so inextricably tied to Ms. Smith’s credibility that it bore significantly on the determination of whether Ms. Smith’s version was accurate and truthful.
State v. Vaughn, 431 So.2d at 371.
In this ease, the prosecution was permitted to introduce evidence of another crime between defendant and Lair which occurred the day before the shooting to explain why defendant and not Lair was the aggressor. Defendant was not allowed to introduce evidence to explain why Lair (and not himself) was the aggressor, to support his claim that he acted in self-defense. We also find the following statement from Vaughn, 431 So.2d at 371, pertinent:
Doubtless, conscientious trial judges have difficulty making quick decisions on complex issues presented during a trial, and the “hindsight” of an appellate court’s review of a full record may more clearly reveal the significance of an issue. For this reason, appellate courts accord great deference to the decisions of trial judges. Nevertheless, when a reviewing court concludes on a review of the record that the trial court improperly prevented a defendant from offering evidence which is critical to the theory of his case, we must reverse because the error is not harmless beyond a reasonable doubt. State v. Gibson, 391 So.2d 421 (La.1980).
(Footnote omitted.)
We find that the cumulative effect of the trial court’s rulings in connection with these three assignments of error deprived defendant from fully presenting his defense, thereby denying him due process of law because: (1) Angela Andrews’ testimony was relevant and admissible to corroborate defendant’s testimony that Lair and his wife were having an extra-marital affair and to contradict the testimony of Lair (as it affects his credibility), and (2) the testimonies of Roan, Anderson and Lee were relevant and admissible to substantively prove the affair between Lair and defendant’s wife, to impeach the testimony of defendant’s wife (if she denied the affair; La.R.S. 15:493) and to contradict Lair (and thus affect his credibility.). We are not convinced that the exclusion of this evidence did not affect the jury’s determination. La.C.Cr.P. art. 921. State v. Gibson, 391 So.2d 421 (La.1980). Fundamental fairness dictates that the jury should hear both versions completely.
Accordingly, defendant’s conviction and sentence are set aside, and this case is remanded for a new trial.
REVERSED AND REMANDED.

. This sentence is unlawfully lenient because La.C.Cr.P. art. 893.1 requires that it be served without benefit of probation, parole or suspension of sentence.

. See La.R.S. 15:484 and 485; State v. Talbot, 408 So.2d 861 (La.1980).