581 So.2d 1060 (1991)
STATE of Louisiana
v.
James Kevin MOSBY (Two Cases).
Nos. KA 90 0920, KA 90 0921.
Court of Appeal of Louisiana, First Circuit.
May 16, 1991.
*1062 Bryan Bush, Dist. Atty., Baton Rouge, by Suzan Ponder, Asst. Dist. Atty., for plaintiff/appellee.
Office of the Public Defender, Baton Rouge, for defendant/appellant.
Before COVINGTON, C.J., and LANIER and GONZALES, JJ.
LANIER, Judge.
The defendant, James Kevin Mosby, was charged by bill of information with simple robbery, in violation of La.R.S. 14:65. He pled not guilty and, after trial by jury, was found guilty as charged. Subsequently, the defendant was adjudicated a second felony habitual offender. Thereafter, he received a sentence of fourteen years at hard labor, without benefit of parole, probation, suspension of sentence, or good time. This appeal followed.

FACTS
At approximately 10:00 a.m. on March 9, 1987, the victim, Guy McFarland, drove to the Louisiana National Bank (LNB) located in the Republic Tower Building at 5700 Florida Boulevard in Baton Rouge, East Baton Rouge Parish, Louisiana. As he exited his vehicle, he observed a young, black male (later identified as the defendant) standing outside. McFarland made eye contact with the young, black male, who quickly looked away and walked off. McFarland entered the lobby of the bank, intending to make a deposit from his seafood business. He carried an LNB bank bag containing approximately $4,000.00 in cash and checks. As he stood in line in the lobby, the same person he had observed outside only a few minutes earlier approached from behind, grabbed the bank bag, and ran to the door. As the bag was taken from him, McFarland spun around and observed the perpetrator's side and the profile of his face. McFarland immediately gave chase. The perpetrator ran into a locked glass door and shattered it. He then slid to the other door, exited, ran through the parking lot into some adjacent apartments, and escaped in a maroon, late model Chevy Nova. McFarland chased the perpetrator until he drove off and obtained a partial license plate number. McFarland then returned to the bank and gave a description of the perpetrator to bank officials and the police.
*1063 Baton Rouge Police Detective Greg Phares showed McFarland a photographic lineup a few weeks after the robbery which contained pictures of six black males, including a suspect named Michael Jackson. McFarland identified no one in this lineup. Thereafter, the defendant's former girlfriend, Diane Johnson, informed Det. Phares that defendant had committed a bank robbery. After receiving this information, Det. Phares prepared another photographic lineup containing pictures of six black males, including a picture of the defendant. He exhibited this photographic lineup to McFarland on June 1. McFarland immediately identified the defendant's picture and stated that he was the perpetrator. Subsequently, the defendant was arrested. Det. Phares testified that the defendant unsuccessfully attempted to evade arrest by hiding in an attic. Approximately two months after identifying the defendant in the photographic lineup, McFarland identified the defendant at a physical lineup held at the Parish Prison.
At the trial, McFarland testified about the facts of this offense and his identifications of the defendant in the photo lineup and the physical lineup. He also made an in-court identification of the defendant.
Det. Phares testified about his investigation of the robbery, his preparation of the two photographic lineups, and McFarland's identification of the defendant's picture in the second photographic lineup. Lisa Lusk, who was on the tenth floor of the Republic Tower Building, testified that she observed a white male chasing a black male outside the building on the morning of the robbery. However, she testified that she was never able to identify the perpetrator.
Diane Johnson, the defendant's former girlfriend and the mother of his daughter, also testified at the trial. Although she was originally called as a State witness, the prosecutor requested that she be declared a hostile witness when she allegedly gave testimony which differed from the information previously given to the prosecutor. The trial court granted this request and ruled that Ms. Johnson was a hostile witness. Although both the questioning of Ms. Johnson and her answers to these questions were somewhat difficult to follow, Ms. Johnson admitted that the defendant told her he had committed a robbery. When the prosecutor attempted to establish which bank the defendant robbed, Ms. Johnson replied that it was an LNB bank on Airline Highway. Ms. Johnson testified that the defendant laughingly admitted to robbing a bank during a telephone conversation with her which took place while the defendant was in the Parish Prison.
In an attempt to establish that Ms. Johnson's trial testimony changed and/or omitted certain details which Ms. Johnson had previously related to the prosecutor, including the source of Ms. Johnson's information about the defendant's robbery, the location of the robbery, whether or not a glass door or window was broken during this robbery, and whether or not the bank personnel or a patron therein was robbed, the prosecutor introduced into evidence State Exhibit 16, a letter written by the defendant (while in jail) to Ms. Johnson. In State Exhibit 16, the defendant indicates that Ms. Johnson should "tell [the defense attorney] the truth, that you told the police you Heard I pulled a robbery. And hearing I pulled a robbery is called hear-say (sic) evidence. And (sic) cant (sic) be used against me. Therefor (sic) you cant (sic) be called to the stand. Its (sic) very, very important that you tell the truth that you heard + not that I told you this out my mouth." However, when the prosecutor asked Ms. Johnson whether or not the defendant had ever attempted to persuade her not to testify, Ms. Johnson replied that the defendant only indicated that she should tell the truth.
Defendant's grandmother, Helen Brooks, and his aunt, Nell Johnson, testified that the defendant lived with them at the time this robbery was committed. They did not establish an alibi because they could not testify that the defendant was definitely at home on the morning of this offense.
The defense theory of the case was that the instant robbery was committed by someone other than the defendant. Before trial and again during the trial, the defense *1064 attempted to secure a trial court ruling permitting the introduction of evidence of similar offenses. Specifically, the defense attempted to introduce evidence that another individual had perpetrated similar simple robberies of bank patrons, at nearby banks, on January 7, 1987, and April 1, 1987.

ADMISSIBILITY OF IDENTIFICATIONS

(Assignment of error 1)
The defendant contends that the trial court erred in denying his motion to suppress photographic and physical identifications. Specifically, he argues that the photographic lineup was suggestive and, therefore, the subsequent physical lineup identification and in-court identifications were tainted by the initial photographic lineup.
A defendant attempting to suppress an identification must prove that the identification was suggestive and that there was a likelihood of misidentification as a result of the identification procedure. State v. Daughtery, 563 So.2d 1171 (La. App. 1st Cir.), writ denied, 569 So.2d 980 (La.1990). If a witness' attention is focused on the defendant during the lineup, the identification procedure may be unduly suggestive. State v. Collins, 546 So.2d 1246 (La.App. 1st Cir.1989), writ denied, 558 So.2d 599 (La.1990). In reviewing the identification procedure, a trial court must look at the totality of the circumstances surrounding the identification. State v. Brown, 481 So.2d 679 (La.App. 1st Cir. 1985), writ denied, 486 So.2d 747 (La.1986). The pictures used in a photo array should not display the defendant so singularly that the witness' attention is unduly focused upon the defendant. State v. Lewis, 489 So.2d 1055 (La.App. 1st Cir.), writ denied, 493 So.2d 1218 (La.1986). However, a strict identity of characteristics is not required; rather, a sufficient resemblance to reasonably test the identification is necessary. This determination is made by examining articulable features of the pictures or persons used: height, weight, build; hair color, length, and texture; facial hair; skin color and complexion; the shape and size of the nose, eyes, lips, etc. State v. Lewis, 489 So.2d at 1057.
After examining the photo lineup (State Exhibit 14), we find no undue suggestion. The photo lineup consists of color pictures of six young, black males. These pictures are from the waist up, and it is impossible to determine the height of these subjects. All but one have a slim build. The other man is stocky or heavy set. Five of them have mustaches; some have a short beard or goatee; only one is cleanshaven. Two men have short hair, and the others have medium length hair. Two men are wearing bluejeans and no shirt. One man is wearing light blue or gray pants and a yellow and green T-shirt. The remaining three men are wearing prison shirts (one orange and two tan or beige).
The defendant contends that the viewer's attention is focused on his picture because only two men are not wearing a shirt and only one of these two men (the defendant) has a slim build. This contention is without merit.
In Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), the U.S. Supreme Court considered five factors in determining whether or not a photographic identification was reliable: (1) the witness' opportunity to view the defendant at the time the crime was committed; (2) the degree of attention paid by the witness during the commission of the crime; (3) the accuracy of any prior description; (4) the level of the witness' certainty displayed at the time of identification; and (5) the length of time elapsed between the crime and the identification. Even should the identification be considered suggestive, this alone does not indicate a violation of the defendant's right to due process. It is the likelihood of misidentification which violates due process, not merely the suggestive identification procedure. State v. Lewis, 489 So.2d at 1057-1058.
Applying the Manson analysis to the facts of the instant case, we find that the victim's identification of the defendant was reliable. The victim viewed the defendant in the parking lot before entering the *1065 bank. When the defendant grabbed the bank bag from the victim's hand, the victim was able to view the defendant from the side and from behind at a very close distance. A lengthy chase followed this offense, during which the victim's attention was certainly focused upon the defendant. Although there was an approximate twelve-week period between the commission of the offense and the victim's identification of the defendant's picture from this photographic lineup, the victim maintained that he was certain the defendant was the person who robbed him. Both the out-of-court identifications (photographic and physical lineups) and the in-court identification were positive and unequivocal. Accordingly, the trial court correctly denied the defendant's motion to suppress.[1]
This assignment of error is without merit.

ADMISSIBILITY OF EVIDENCE OF SIMILAR OFFENSES

(Assignments of error 2 and 4)
The defendant contends that the trial court erred by refusing to allow him to introduce evidence of similar offenses committed by another person to show that he did not commit the instant offense. The defense theory in the case was that someone other than the defendant committed the robbery of McFarland. In support of this theory, the defense attempted to introduce evidence that Michael Jackson, who is also a young, slim-built black male, had been arrested and charged with committing two similar robberies of white males at nearby banks. These robberies involved the taking of bank deposit bags at two banks within a few miles of the Republic Tower Branch of Louisiana National Bank on January 7, 1987, and April 1, 1987.[2]
A defendant in a criminal case has a constitutional right to present a defense; he can testify to or give evidence on any matter relevant to an issue material in the case. La.R.S. 15:435; State v. Bennett, 517 So.2d 1115 (La.App. 1st Cir.1987), writ denied, 523 So.2d 1335 (La.1988). A "material issue" is one which is "of solid or weighty character, of consequence, or importance" to the case. State v. Ludwig, 423 So.2d 1073 (La.1982). Relevant evidence is that tending to show the commission of the offense and the intent, or tending to negate the commission of the offense and the intent. La.R.S. 15:441. The relevancy of evidence must be determined by the purpose for which it is offered. La.R.S. 15:442.[3] Any evidence, whether direct or circumstantial, is relevant if it tends to prove or disprove the existence of any material fact. State v. Patch, 470 So.2d 585 (La.App. 1st Cir.), writ denied, 475 So.2d 358 (La.1985).
An attempt by the defense to introduce evidence of similar offenses or acts often occurs when mistaken identity is alleged as a defense. State v. Armstrong, 453 So.2d 1256 (La.App. 3d Cir.), writ denied, 457 So.2d 16 (La.1984). Similar problems arise in cases wherein self-defense is an issue, and the defense wishes to introduce evidence of prior violent acts by the victim or other evidence which might support a finding *1066 of self-defense. State v. Martin, 458 So.2d 454 (La.1984); State v. Anderson, 550 So.2d 797 (La.App. 2d Cir.1989), writ denied, 556 So.2d 1260 (La.1990); State v. Tarver, 521 So.2d 601 (La.App. 1st Cir.), writ denied, 525 So.2d 1056 (La.1988); State v. Guerin, 452 So.2d 746 (La.App. 1st Cir.1984).
In the instant case, the defendant relied on State v. Patch in support of his argument that the evidence of similar offenses was relevant and admissible. In Patch, the defendant attempted to introduce evidence of a similar obscenity offense to show that another committed the instant offense. The alleged perpetrator of this similar obscenity offense apparently had a striking resemblance to Patch, and the similar offense occurred in the same area as the offense for which Patch was on trial. This evidence of a similar offense committed by a man resembling the accused, combined with the accused's alibi defense, tended to support the defense theory of mistaken identification. In Patch, this Court held that the trial court committed reversible error by excluding relevant evidence of an offense similar to the offense for which the accused was being prosecuted (obscenity). The trial court herein distinguished Patch on the basis that the defendant therein had produced an alibi defense. The trial court ruled that the defense could not introduce evidence that Michael Jackson allegedly committed two similar robberies without also introducing alibi evidence. This ruling was erroneous. Evidence that Michael Jackson allegedly committed two similar robberies was relevant because it tended to support the defense theory of mistaken identification. While Patch involved an alibi defense in addition to evidence of the similar obscenity offense, and the alibi clearly supported the argument that the other individual actually committed the offense for which Patch was charged, we did not hold that evidence of an alibi was a prerequisite to the introduction of evidence of a similar offense to support a theory of mistaken identification.
It is the trial court's responsibility to determine admissibility related to issues of relevancy, to issues of collateral impeachment, and to issues of remote circumstances that may tend to shed light upon the ultimate issue of innocence. If error is committed and an appellate court finds, beyond a reasonable doubt, that the error was harmless in light of the total circumstances, the defendant's conviction will not be overturned. State v. Humphrey, 412 So.2d 507 (La.1981). Conversely, when a reviewing court concludes on a review of the record that the trial court improperly prevented a defendant from offering evidence which is critical to his theory of the case, the appellate court must reverse because the error is not harmless beyond a reasonable doubt. State v. Vaughn, 431 So.2d 358 (La.1982).
Although the trial court erred in excluding the evidence of similar offenses herein, we conclude this error was harmless beyond a reasonable doubt. The defense wished to introduce evidence that Michael Jackson allegedly perpetrated two similar robberies, the implication being that Jackson also committed the instant offense. However, information received from Ms. Johnson that the defendant had committed a bank robbery (or a robbery at a bank) prompted Det. Phares to prepare a photo lineup including the defendant's picture. McFarland identified this picture of the defendant and later identified the defendant in a physical lineup and in court. The possibility of mistaken identification was suggested to the jury. However, defense counsel's cross-examination of the victim failed to weaken his identifications of the defendant as the perpetrator of this robbery. Furthermore, the inference (circumstantial evidence) that Michael Jackson committed the instant offense is significantly rebutted by the direct evidence that McFarland did not identify Jackson's picture in the first photographic lineup conducted a few weeks after the offense. Thus, we conclude that the exclusion of the proffered evidence, although error, was harmless beyond a reasonable doubt. Cf. State v. Bennett, 517 So.2d at 1117-1118.
These assignments of error are without merit.

*1067 SUFFICIENCY OF EVIDENCE

(Assignment of error 6)
The defendant contends that the trial court erred in denying his motion for post-verdict judgment of acquittal. Specifically, he argues that the evidence was insufficient to support the instant conviction.
The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the State proved the essential elements of the crime and the defendant's identity as the perpetrator of that crime beyond a reasonable doubt. La.C.Cr.P. art. 821; State v. Johnson, 461 So.2d 673 (La.App. 1st Cir.1984).
La.R.S. 14:65(A) provides:
Simple robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, but not armed with a dangerous weapon.
In the instant case, there is no doubt that a young, black male committed simple robbery by taking a bank bag from the victim. The only issue is whether or not this offense was committed by the defendant or someone else. Positive identification by only one witness if accepted by the finder of fact, may be sufficient to support the defendant's conviction. State v. Royal, 527 So.2d 1083 (La.App. 1st Cir.), writ denied, 533 So.2d 15 (La.1988).
McFarland had ample opportunity to observe the defendant outside the bank immediately before the robbery. He also observed the defendant from the side and back as he chased him after the robbery. McFarland positively identified the defendant in pretrial and in-court identifications. McFarland viewed Michael Jackson's picture in the first photo lineup but did not identify him. Viewing all of the evidence in the light most favorable to the prosecution, we find that the evidence presented by the State was sufficient beyond a reasonable doubt.
This assignment of error is without merit.

LEGALITY OF THE SENTENCE

(Assignment of error 7)
The defendant contends that the trial court erred in imposing an excessive sentence and in failing to comply with the sentencing guidelines of La.C.Cr.P. art. 894.1.
The Code of Criminal Procedure sets forth items which must be considered by the trial court before imposing sentence. La.C.Cr.P. art. 894.1. The trial court need not recite the entire checklist of Article 894.1, but the record must reflect that it adequately considered the guidelines. State v. Chaisson, 507 So.2d 248 (La.App. 1st Cir.1987). In light of the criteria expressed by Article 894.1, a review for individual excessiveness should consider the circumstances of the crime and the trial court's stated reasons and factual basis for its sentencing decision. State v. Watkins, 532 So.2d 1182 (La.App. 1st Cir.1988). The trial court has wide discretion in imposing a sentence within the statutory limits; and such a sentence will not be set aside as excessive in the absence of manifest abuse of discretion. State v. Latiolais, 563 So.2d 469 (La.App. 1st Cir.1990).
Before imposing sentence, the trial court reviewed a presentence investigation report and considered the defendant's lengthy criminal record. The defendant had a prior felony conviction for theft. The instant offense resulted in the defendant's second felony conviction. The trial court noted that the defendant had been adjudicated a second felony habitual offender and had been arrested eleven times between the commission of his first felony offense (1981) and the instant offense (March of 1987). According to the presentence investigation report, the defendant's parole for his first felony conviction was revoked due to one of these arrests. The defendant had been convicted of numerous misdemeanors. While serving a combined sentence of fourteen months for several misdemeanor convictions, the defendant *1068 was arrested for attempted first degree murder and attempted aggravated rape. The trial court stated the only possible mitigating factor was the defendant's age (25). Finally, the trial court concluded that the defendant was in need of correctional treatment and stated that there was an undue risk that the defendant would commit further crimes if not imprisoned for a lengthy period of time. The trial court adequately complied with the Article 894.1 guidelines.
After having been adjudicated a second felony habitual offender, the defendant received the maximum sentence of fourteen years at hard labor. La.R.S. 14:65(B) and La.R.S. 15:529.1(A)(1). The maximum sentence should be imposed only in cases involving the most serious offenses and worst offenders. State v. Easley, 432 So.2d 910 (La.App. 1st Cir.1983). Considering the circumstances of this offense, and the defendant's lengthy criminal record, we cannot say that the sentence imposed constitutes an abuse of the trial court's discretion.
The defendant also contends that the trial court erred in imposing a sentence without benefit of parole, probation, suspension of sentence, or good time. Having two felony convictions, the defendant was not eligible for a suspended sentence and probation. La.C.Cr.P. art. 893(A). The defendant's felony theft conviction, which was committed after September 10, 1977, and his adjudication as a second felony habitual offender, rendered him ineligible for good time. La.R.S. 15:571.3(C)(1), (2), and (3)(b). However, the trial court erred in sentencing the defendant without benefit of parole. Even with two prior felony convictions, the defendant will be eligible for parole after serving one-half of his sentence. La.R.S. 15:574.4(A)(1). In amending this sentence, we note that sentencing discretion considerations are not involved herein, because the defendant received the maximum sentence. Therefore, we simply amend the defendant's sentence to provide that he will become eligible for parole upon serving one-half of his sentence. Resentencing is not required. However, the case is remanded to the district court for correction of the sentencing minutes and order of commitment.

DECREE
For the foregoing reasons the conviction is affirmed, the sentence is amended to provide that the defendant shall not be eligible for parole until after he has served one-half of his sentence, the sentence is otherwise affirmed, and this case is remanded to the trial court for correction of the minutes of the sentencing and the order of commitment.
CONVICTION AFFIRMED; SENTENCE AMENDED AND AFFIRMED; REMANDED.
NOTES
[1] In his brief, the defendant raised an additional argument about a picture of the alleged perpetrator of the instant robbery contained in the bank video camera. Apparently, the video tape containing this picture was placed back inside another bank video camera and taped over. However, this argument was not assigned as error. In accord with the well-established jurisprudence of the Louisiana Supreme Court, this Court will not consider arguments which are neither assigned as error nor related to errors patent on the face of the record. State v. Williams, 319 So.2d 404 (La.1975); State v. Spears, 525 So.2d 329, 330 n. 4 (La.App. 1st Cir.), writ denied, 532 So.2d 175 (La.1988).
[2] After trial, the trial court conducted a proffer hearing to show what evidence would have been introduced of the two similar offenses allegedly committed by Michael Jackson. At this hearing, the defense introduced the testimony of Baton Rouge City Police Detectives Greg Phares and Bart Thompson, the officers who investigated the other two robberies. The defense also introduced the preliminary hearing transcript from the prosecution of Michael Jackson for the alleged commission of these two robberies.
[3] La.R.S. 15:435, 15:441, and 15:442, cited herein, were in effect at the time of the instant trial. However, these provisions were repealed by the new Code of Evidence, which became effective on January 1, 1989. See Acts 1988, No. 515.