741 So.2d 96 (1999)
Dessire CRAWFORD, Plaintiff-appellee,
v.
RYAN'S FAMILY STEAK HOUSES, INC., Defendant-appellant.
No. 31,911-CA.
Court of Appeal of Louisiana, Second Circuit.
May 5, 1999.
*97 McGlinchey Stafford Lang by Elizabeth Palermo Blitch, New Orleans, Counsel for Appellant.
Mills, Timmons & Flowers by David C. Turansky, Shreveport, Counsel for Appellee.
Before NORRIS, CARAWAY and KOSTELKA, JJ.
CARAWAY, J.
In this slip and fall case, the defendant/restaurant contends that the trial court's ruling for the plaintiff misapplied La. R.S. 9:2800.6 as interpreted by the recent decisions of our supreme court. Defendant also contends that the trial court's award of damages was excessive while the plaintiff asserts by her answer to the appeal that the compensation was inadequate. Finding that the trial court could properly credit the circumstantial evidence of defendant's constructive knowledge of the spill, we affirm the trial court's judgment and the award of damages.

Facts
On Sunday, March 24, 1996, Dessire Crawford ("Crawford") went to lunch with *98 some of her family and friends at Ryan's Family Steak Houses, Inc. ("Ryan's"). The restaurant was crowded and after paying for their meals, the party waited for a table to become available. Crawford and four members of her party testified that a manager began escorting them to a table guiding them through a narrow passageway beside one of the food bars known at Ryan's as "mega bars."
While walking to a table, Crawford slipped and fell on a substance identified by Daryl Trammell ("Trammel"), a floor manager at Ryan's, as taco beef. Trammell testified that the taco meat on the mega bars was located away from where Crawford fell. Trammell called for an ambulance and Crawford was transported to Willis-Knighton North.
At trial, Trammell testified about the safety procedures practiced at Ryan's. These include that anytime there is a spill in the restaurant, one employee stays at the spot while another employee retrieves and places a wet floor sign over the spill to notify customers of a hazardous area. One of the employees then gets a mop or a broom to clean up the floor. The yellow wet floor sign is conical in shape and is approximately four feet high with a one foot wide base. The wet floor sign is left in the area until the surface has completely dried. Although no one in Crawford's party testified to seeing a wet floor sign, Trammell said that there was a sign in the area near the taco meat. Keith Woods ("Woods"), Ryan's store manager, also said, and the Ryan's liability report indicated, that Crawford slipped on taco meat and fell on a wet floor sign.
Trammell testified that Ryan's employees were constantly moving around the restaurant showing customers to tables and replenishing items on the mega bars. At trial, Trammell stated that it was not one particular person's duty to check the floor but that it was the responsibility of every employee and manager to monitor the floor and make sure it was clean and safe.
Crawford's fall occurred at 1:40 p.m. which is considered a peak time at Ryan's. Woods stated that the Bossier Ryan's where this accident occurred can seat 530 people and is one of the bigger Ryan's restaurants. Sunday is the busiest day of the week at Ryan's and approximately seventy percent of the customers choose the mega bar as their meal.
Dr. M. Ragan Green, Jr., an orthopaedic surgeon who had previously treated Crawford, stated that Crawford saw him on April 2, 1996 and he diagnosed a contusion of the right hip, strain of the muscle in the buttocks area, contusion of the right elbow and sprain of the wrist knob. Although Crawford had a degenerative arthritic condition in her hips prior to her fall at Ryan's, Dr. Green was unable to render an opinion as to whether the accident made the degenerative changes more severe.
Dr. Green placed Crawford on anti-inflammatories and, on April 17, 1996, Dr. Green wrote a prescription for Crawford to attend physical therapy three times a week for lumbar and hip pain. Crawford attended physical therapy for approximately one month for injuries she sustained in the accident. She stated that she discontinued physical therapy at that time because her insurance benefits had run out and she was not improving.
On June 24, 1996, Crawford visited Eric Berg, D.C., a chiropractor, complaining of low back, hip and neck pain. Crawford did not return to Dr. Berg's office until October 8, 1996 when she again gave a history of hip and lumbar pain resulting from the slip and fall at Ryan's. Crawford continued a regular treatment program at Dr. Berg's clinic until March 12, 1997. Crawford testified that she discontinued the chiropractic treatments because her condition had not significantly improved.
Crawford saw Dr. Harold R. Bicknell, an orthopaedic surgeon, in July and August of 1997 reporting pain in her right wrist and hands, low back, hip areas and shoulder. X-rays of the pelvis and hips *99 revealed marked degenerative joint disease in both hips. Dr. Bicknell stated that although he believed Crawford's degenerative joint disease preceded her fall at Ryan's in March 1996, a trauma could cause some aggravation of the chronic condition but in his opinion, the aggravation would probably only last three to six months.
Following the presentation of the evidence, the trial court rendered judgment in favor of Crawford finding Ryan's to be one hundred percent liable for her damages and awarded Crawford damages in the amount of $20,909.25 representing $5,909.25 in special damages and $15,000.00 in general damages.

Discussion
In a brief opinion, the trial court said, "What distinguishes this situation from other slip and fall cases is the fact that the manager led the plaintiff into harm's way. By attempting to perform his job courteously and efficiently, he inadvertently led these folks through a constricted area where the greasy beef was awaiting Ms. Crawford." In explaining Ryan's procedures for seating patrons, Trammell and Woods both stated that a Ryan's employee generally led customers to their tables. This was particularly true on Sundays, Ryan's busiest day of the week when one employee would keep patrons in a waiting area while another employee scouted out an available seating area. The customers were then escorted to their tables. Crawford and each member of her party testified that after a few minutes' wait, a Ryan's employee began leading them toward a table walking through a narrow passageway beside the food bar. Thus, despite some contradictory evidence,[1] the evidence tended to show and the trial court so found that the employee walked slightly ahead of the party past the spot where Crawford fell.
A court of appeal may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed, even though the appellate court may feel that its own evaluations and inferences are as reasonable as those of the lower court. When findings of fact are based on determinations regarding the credibility of witnesses, the manifest error/clearly wrong standard demands great deference to the trier of fact's findings. Only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in that which is said. Rosell v. ESCO, 549 So.2d 840 (La.1989); Freeman v. Rew, 557 So.2d 748 (La.App. 2d Cir.1990), writ denied, 563 So.2d 1154 (La.1990).

Plaintiffs Statutory Burden of Proof
Accepting the above scenario, this case is governed by La. R.S. 9:2800.6 which is the slip and fall statute concerning merchants. This statute, as revised in 1990 and in effect at the time of the instant accident[2] states, in pertinent part, as follows:

*100 A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, that:
(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable;
(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence; and
(3) The merchant failed to exercise reasonable care.
C. Definitions:
(1) "Constructive notice" means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care.
(2) "Merchant" means one whose business is to sell ... foods at a fixed place of business.
Based upon the recent ruling of our supreme court in White v. Wal-Mart Stores, Inc., 97-0393 (La.9/9/97), 699 So.2d 1081, Ryan's makes the following arguments disputing the trial court's ruling and its determination of constructive notice in this case:
(i) ... [T]o find liability based on Ryan's alleged constructive notice, one can only conclude that Judge Drew made the unsupported assumption that the manager could have seen the taco meat before plaintiff was led through the area. If the basis of Judge Drew's ruling was that the manager's alleged presence constitutes constructive notice, he inferred constructive notice, just as the Fifth Circuit did in White. Such an inference was rejected as error by the Supreme Court, 699 So.2d at 1084, and constitutes reversible error here. (Emphasis supplied by Ryan's.)
(ii) Plaintiff and all of her witnesses testified that they did not know how the taco meat got onto the floor or how long the taco meat was on the floor before the fall. No one testified to seeing anyone serving or carrying taco meat, much less spilling it, and the taco meat was served from an area of the Mega Bar well away from the area of the fall.... The alleged escorting by the manager Judge Drew's only apparent basis for assigning liability does not establish a time period for the existence of the condition.
In White, the court explained the plaintiff's statutory burden for proving the merchant's "constructive notice" of a spill. Discussing constructive notice as defined in subsection (C)(1) of the statute the court said:
There is a temporal element included: "such a period of time ..." The statute does not allow for the inference of constructive notice absent some showing of this temporal element. The claimant must make a positive showing of the existence of the condition prior to the fall. A defendant merchant does not have to make a positive showing of the absence of the existence of the condition prior to the fall. Notwithstanding that such would require proving a negative, the statute simply does not provide for a shifting of the burden.
Though there is no bright line time period, a claimant must show that "the condition existed for such a period of time ..." Whether the period of time is *101 sufficiently lengthy that a merchant should have discovered the condition is necessarily a fact question; however, there remains the prerequisite showing of some time period. A claimant who simply shows that the condition existed without an additional showing that the condition existed for some time before the fall has not carried the burden of proving constructive notice as mandated by the statute. Though the time period need not be specific in minutes or hours, constructive notice requires that the claimant prove the condition existed for some time period prior to the fall. This is not an impossible burden.
White, supra. 1084-85 [footnote omitted].
In the most recent supreme court review of a slip and fall case, the above quoted ruling of White was reaffirmed in a per curiam ruling which reversed the lower court's verdict for the plaintiff. Kennedy v. Wal-Mart Stores, Inc., 98-1939 (La.4/13/99), 733 So.2d 1188. As in White, the plaintiff in Kennedy slipped in a clear liquid (a puddle of water) with a Wal-Mart employee on duty within sight of the plaintiff at the time of the fall. While each Wal-Mart employee was responsible for an hourly "zone defense" check of the area near his work station, the employee in Kennedy, as in White, was not shown to have ever seen the clear liquid on the floor before the fall. Under these facts, the court ruled that the plaintiff failed to prove Wal-Mart's constructive notice of the hazard because the "plaintiff presented absolutely no evidence as to the length of time the puddle was on the floor before his accident." Id. slip opin. p. 4, p. 1191.
Under White, the statutory "temporal element" in the definition of constructive notice must be proven by what the court refers to as "positive evidence."[3] See White, supra, 1085-86. Although the court did not define the phrase "positive evidence," the Louisiana evidence code[4] and the longstanding judicial and academic understanding of relevant evidence demonstrate that proof of a material fact, such as this statutory temporal element, may be made by both direct and circumstantial evidence.[5] Professor Wigmore indicates in *102 his treatise that circumstantial evidence may be as persuasive as testimonial or direct evidence in providing a compelling demonstration of the existence or nonexistence of a fact in issue. 1A Wigmore, Evidence § 26 (Tillers rev.1983).
Without a precise definition of White's use of the phrase "positive evidence," we cannot assume that a plaintiff in a slip and fall case must bear the burden of proof imposed by the statute without the normal rule of evidence allowing for circumstantial evidence to prove a material fact. We therefore reject Ryan's initial argument that the trial court could not infer that Ryan's employee who escorted Crawford to her table could have seen the taco meat. The circumstantial evidence of his location to the spill and his training to look for spilled food in the restaurant implies that he could have seen the hazard and prevented the accident. Indeed, Ryan's complaint that the trial court "inferred constructive notice" misses altogether the law's allowance to the fact finder to construe or draw the conclusion of notice from facts and circumstances which show something less than actual knowledge. The statute does not require proof that the employee look down and actually see the spill because the statute itself distinguishes between actual and constructive notice.
In White and Kennedy, the Wal-Mart employees failed to see the clear liquids on the floor near their work stations. Since the puddles of clear liquids were difficult to see and since the employees were not shown to have walked directly over the floor area of the spill between the time of the spill and the accident, proof that the employees could have noticed the spill was not made through strong circumstantial evidence. In this case, the taco meat was visible. Every Ryan's employee moving through the highly trafficked food bar area had the responsibility to look for spills. Thus, in escorting Crawford to a table in the restaurant, the Ryan's employee could have and should have seen the spill in this case.
Next, Ryan's argues that White requires proof of the time period the temporal element of the existence of the spill and that plaintiff did not establish when the taco meat first fell on the floor. This argument fails to properly consider the interplay between the temporal element of the existence of the spill on the floor and the temporal element of the time of merchant's last inspection. In many slip and fall cases, evidence of the time of the merchant's last floor inspection establishes one temporal fact which is then considered in relation to the time of the spill and its length of time on the floor prior to the fall. The alleged lack of reasonable care of the merchant is then measured in terms of the reasonableness of the delay between the time of merchant's last inspection and the time of the spill.
In contrast, in this case there was no delay because the merchant's last opportunity to inspect the premises coincided with the time of the spill's existence on the floor and the fall itself. Instead of negligence for the delay or lack of inspection, Ryan's was held negligent by the trial court for its employee's failed inspection immediately prior to the fall. From this view of the case, the precise time that the meat fell on the floor is irrelevant because the spill was shown to have been in existence when Ryan's employee escorted Crawford through the area of the spill.

Damages
Ryan's next argues that the trial court committed error in awarding excessive general damages in the amount of $15,000 for Crawford's injuries and that the most which should have been awarded was $7,500. Crawford, on the other hand, asserts *103 that this general damage award is inadequate and should be increased by this court.
General damages are those which may not be fixed with pecuniary exactitude. They instead involve mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or life-style which cannot be definitively measured in monetary terms. Kessler v. Southmark Corp., 25,941 (La.App.2d Cir.9/21/94), 643 So.2d 345.
The discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La. 1993); Jones v. Thomas, 27,140 (La.App.2d Cir.8/23/95), 660 So.2d 86, writ denied, 95-2351 (La.12/8/95), 664 So.2d 426. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award. Youn, supra. Only after such an abuse of discretion is noted will a resort to prior awards be appropriate and then only for the purpose of determining the highest or lowest point which is reasonably within that discretion. Youn, supra.
Crawford underwent physical therapy for one month and chiropractic treatments for almost six months. Crawford and her family and friends testified that she experienced a significant increase in her level of pain and a notable decrease in the activities she was able to participate in from the time before this accident occurred. While Crawford had a degenerative arthritic condition prior to her fall at Ryan's, two orthopaedic surgeons, Drs. Green and Bicknell, stated that a traumatic event such as a fall could cause some aggravation of her chronic condition. When a defendant's negligent conduct aggravates a pre-existing condition, the victim must be compensated to the full extent of the aggravation. Miley v. Landry, 582 So.2d 833 (La.1991); Perniciaro v. Brinch, 384 So.2d 392 (La.1980). Dr. Bicknell admitted that it was extremely difficult from a medical standpoint to differentiate between Crawford's current condition and the condition she would have been in due to her pre-existing conditions if this incident had not happened. Thus, the trial court's conclusion that the fall aggravated the plaintiff's pre-existing condition for an extended period of time supports the amount of the award in this case.
While reasonable persons can disagree about the trial court's award of $15,000, we cannot conclude that it is abusively high or low. Finding no abuse of the trial court's vast discretion to award general damages, we affirm the general damages award of $15,000 rejecting the claims by both parties in this appeal to the contrary.

Conclusion
For the foregoing reasons, we affirm the trial court's judgment. Costs of this appeal are assessed to the appellant.
AFFIRMED.
NOTES
[1] Crawford identified the person leading them to a table as Woods while the other members of her party stated that a manager was escorting them. While Woods testified that he was not leading Crawford's party and was, in fact, standing twenty to thirty feet away from Crawford when she fell, we find that with the testimony that it was Ryan's normal procedure to have a Ryan's employee seat customers, the trial court's finding that a manager was escorting Crawford's party is reasonable. Woods and Trammel also testified that there was a yellow wet floor sign near the spot where Crawford fell but Crawford and the other members of her party denied seeing such a sign.
[2] Effective May 1, 1996, the legislature amended La. R.S. 9:2800.6 to clarify that in determining reasonable care in subsection (B)(3), the absence of written or verbal uniform cleanup or safety procedures is insufficient, alone, to show a lack of reasonable care and in subsection (C)(1), that the presence of an employee in the vicinity does not, alone, constitute constructive notice. The amended statute expressly applies only to causes of action arising on or after the effective date. 1996 La. Acts No. 8 § 2.
[3] We have reviewed prior jurisprudence of our supreme court where the phrase "positive evidence" has been employed and find no clear and consistent usage given to the term. In Joseph v. Bohn Ford, Inc., 483 So.2d 934, 942 (La.1986), the court stated that "causation can be proved by negative as well as positive evidence." The negative evidence to which the court referred was circumstantial evidence of a brake failure in an automobile. In Montgomery v. Opelousas General Hospital, 540 So.2d 312, 320 (La.1989), the court said that "the direct evidence offered by the defendants... is not positive evidence." The direct evidence to which the court referred was the physician's observing and touching of the patient's nerve during an operation. In cases involving proof of adultery, the court recognized that "direct or positive evidence" will seldom be established, leaving adultery to be proven by "indirect or circumstantial evidence." Hayes v. Hayes, 225 La. 374, 73 So.2d 179, 180 (1954).
[4] La. C.E. art. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." See State v. Mosby, 581 So.2d 1060 (La.App. 1st Cir.1991), where the court stated that "any evidence, whether direct or circumstantial, is relevant if it tends to prove or disprove existence of any material fact" (affirmed by the Louisiana Supreme Court, 595 So.2d 1135 (La.1992)).
[5] In his treatise, Professor Wigmore sets out the distinction between circumstantial and testimonial evidence. Wigmore points out that "direct evidence" is an alternative term for testimonial evidence which has been sanctioned by usage. In reviewing prior jurisprudence, Wigmore cites one case which says that all judicial evidence must be either direct or circumstantial and then further states, "When we speak of a fact as established by direct or positive evidence, we mean that it has been testified to by witnesses as having come under the cognizance of their senses, and of the truth of which there seems to be no reasonable doubt or question; and when we speak of a fact as established by circumstantial evidence, we mean that the existence of it is fairly and reasonably to be inferred from other facts proved in the case" (emphasis added). State v. Carter, 1 Houst. Crim. Cas. 402, 410-411 (Del. Oyer & Terminer 1873). 1A Wigmore, Evidence § 25 (Tillers rev. 1983).